## JACOB GRISSELL vs. THE HOUSATONIC RAILROAD COMPANY.

Hartford District, Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS AND GRANGER, JS.

The act of 1881 (Session Laws, ch. 92,) provides that where any injury is done to " a building or other property " by a fire communicated by the locomotive of a railroad, without contributory negligence on the part of the owner of the property, the railroad company shall be responsible in damages; and that every railroad company shall have an insurable interest in the property for which it may be so held responsible and may procure insurance thereon. Held—

1. That the act was not unconstitutional and invalid, either (1) as denying to railroad corporations the equal protection of the laws, in making them liable for the consequences of a lawful act without negligence on their part, or (2) as taking away their property without due process of law in depriving them of a legal defense, or (3) as impairing the rights given them by their charters, which authorize the use of fire in operating their locomotives and require them to run their trains, for the unavoidable consequences of which they are made liable.

2. That the statute, under the expression " buildings or other property," includes fences and forest trees.

It is not necessary that the property should be such as is ordinarily regarded as insurable. The statute creates an insurable interest, which is independent of the question whether an insurer could be found to take the risk.

The statute is valid in its application to railroad companies which had taken the land for their road and paid the assessed damages before the act was passed.

This is especially so where the charter of such a railroad company contains a provision that it may be altered at the pleasure of the General Assembly and that it shall be subject to all general laws that may be enacted.

[Argued October 7th—decided December 23d, 1886.]

ACTION for the destruction of fences and trees upon the land of the plaintiff near the railroad of the defendant company by fire communicated by the locomotive of the defendants; brought before a justice of the peace, and, by appeal, to the Court of Common Pleas of Litchfield County, and tried to the jury before *Warner, J.*

The action was founded upon the following statute, enacted in 1881:—

"Where any injury is done to a building or other property of any person or corporation, by fire communicated by a locomotive engine of any railroad corporation, without contributory negligence on the part of the person or corporation entitled to the care and possession of the property injured, the said railroad corporation shall be held responsible in damages to the extent of such injury, to the person or corporation so injured; and any railroad corporation shall have an insurable interest in the property for which it may be so held responsible in damages, along its route, and may procure insurance thereon in its own behalf."

On the trial the plaintiff offered evidence to prove that on the 16th day of April, 1885, between the hours of eleven and twelve in the forenoon, the defendant was running a locomotive engine with a train of cars attached thereto in a northerly direction, along the side of the plaintiff's land, which lies on the easterly side of the defendant's layout; that very soon after the train had passed a smoke and fire were seen by witnesses, on the easterly side of the defendant's track, and that traces of the fire were visible from the track to and upon the land of the plaintiff and land of one Gaylord; that no smoke or fire were seen in that vicinity prior to the passage of the train, although the witnesses were in a position to have seen the same if any existed; that at that time there was a high wind blowing from a northwesterly direction; and that the fire progressed with great rapidity and burned the plaintiff's fences, growing trees and herbage. No witness testified that he saw the spark of fire come from the locomotive which set the fire.

The plaintiff also offered evidence to prove that he did not contribute to the injury, and that he was not negligent in the care of his property, and did not expose it to fire from locomotive engines. He also offered evidence to prove the damage done to his fences, growing timber and herbage by the fire.

To this last evidence the defendant objected, on the

ground, 1st, that there had been no proof of negligence on the part of the defendant; and 2d, that the plaintiff could not recover under the provisions of the act of 1881, until he should prove that the defendant had, or could have, an insurable interest in the property injured by the fire, and that the burden of such proof was on the plaintiff. The court overruled the objection and admitted the evidence, and the defendant excepted.

The defendant called one Todd as a witness, who testified that he was a fire insurance agent, and had been for the last eighteen years, and that he did not know of any insurance company that insured growing trees and herbage or fences against fire. This evidence was objected to by the plaintiff, but was heard by the agreement of the parties, subject to the ruling of the court in its charge to the jury.

The defendant requested the court to charge the jury that there was no evidence to prove that the defendant was guilty of any negligence, and as there was no other evidence that the fire was communicated from the defendant's locomotive, the plaintiff could not recover; also that the act of 1881 was unconstitutional and void, as it interfered with the charter rights, contracts and duties of the defendant.

The court did not charge the jury as requested, but instructed them as follows:—

"It is your duty to determine from all the evidence adduced and the circumstances connected with the occurrence of the fire, whether the fire which injured the plaintiff's property proceeded from the defendant's locomotive, or from some other cause. The defendant is not correct in his claim that the statute of 1881 is unconstitutional and void. I instruct you that if you find that the locomotive of the defendant communicated the fire to the land of the plaintiff, either directly or to the land of Mr. Gaylord and from thence it ran on to the land of the plaintiff, and did him the injury of which he complains, and you also find that the plaintiff in no wise contributed to that injury, then your verdict should be for the plaintiff. But this must be proved affirmatively by the plaintiff and by a fair preponderance of evidence on

his part. You must be satisfied from the evidence that the defendant's locomotive communicated the fire that did the injury to the plaintiff, and that he did not contribute to it. It was not incumbent upon the plaintiff to prove that the property which was injured by the fire could have been insured by the defendant. The testimony of Mr. Todd, which was offered to prove that there was no insurance company that could or would insure such property against fire, was not admissible, and is to have no influence on your minds. You will reject it. If you find that the fire that injured the property of the plaintiff did not come from the locomotive of the defendant, then your verdict must be for the defendant. Or if you find that the fire came from the locomotive and you also find that the plaintiff contributed to its spread and extension, then your verdict should be for the defendant."

The jury returned a verdict for the plaintiff, and the defendant appealed to this court, on the ground of error in the charge of the court and in its ruling upon the evidence offered.

*M. W. Seymour*, with whom was *H. H. Knapp*, for the appellant.

*First.* The first question to be considered arises upon the construction of the statute itself. Are "fences," "growing trees" and "herbage" (the only property proved to have been injured) "other property," within the meaning of the statute of 1881? The word "property," HINMAN, C. J., in *Stanton* v. *Lewis*, 26 Conn., 449, says, "of course must include everything that is the subject of ownership." Literally, therefore, "other property" includes franchises, easements, incorporeal hereditaments, and other things incapable of being either insured or destroyed by fire. Clearly, it seems to us, the legislature intended no such sweeping change in our law. Again, that principle of interpretation denominated *noscitur a sociis*, requires the meaning of the words "other property" to be limited to the property of the same general character as "buildings." 2 Parsons on Con-

tracts, 501, note *u*; Potter's Dwarris on Statutes, 272, 292; *Wheeler* v. *McCormick*, 8 Blatch., 267; *Chidsey* v. *Town of Canton*, 17 Conn., 476; *Bailey* v. *Close*, 37 id., 411; *Boon* v. *Ætna Ins. Co.*, 40 id., 575; *Allen's Appeal*, 81* Penn. St., 302; *Renick* v. *Boyd*, 99 id., 555; *Reed* v. *Belfast*, 20 Maine, 246; *Rex* v. *Wallis*, 5 T. R., 375, 379; *Rex* v. *Hall*, 1 Barn. & C., 237. The words themselves being of doubtful interpretation, the intention of the legislature in passing such a statute is a legitimate source from which to seek light. In this view, the provision that the railroad corporation " shall have an insurable interest in the property for which it may be so held responsible in damages and may procure insurance thereon in its own behalf," certainly shows that the legislature intended to limit the meaning of the words " other property," to such other property as is capable of being insured; to such other property as it is possible for the railroad corporation to have "*insured in its own behalf.*" *Chapman* v. *Atlantic & St. Lawrence R. R. Co.*, 37 Maine, 92. If we are right in supposing this to be the proper interpretation of the statute, there can be no doubt that the court erred in not permitting us to prove the impossibility of insuring the property injured?

*Second.* We deny the constitutional power of the legislature to enact any such statute. There are certain propositions which cannot be denied by either side, which are here stated for the purpose of narrowing this discussion to its controverted points:—1st. That the defendant is a corporation chartered in 1836 for the purpose of maintaining and operating a railroad; that under that charter it has acquired property and rights of various kinds; that some of those rights and property are peculiar in their nature, owing to the quasi-public character of its business, and that others are to be controlled by the same rules of law that govern the private property of individuals.—2d. Its charter is a contract between the state and the company, which is within the protection of Art. I., Sec. 10, of the constitution of the United States. *Enfield Bridge Co.* v. *Conn. River Co.*, 7 Conn., 48; *Derby Turnpike Co.* v. *Parks*, 10 id., 522; *Wash-*

*ington Bridge Co.* v. *The State*, 18 id., 64; *Dartmouth College* v. *Woodward*, 4 Wheat., 518; *Planters' Bank* v. *Sharp*, 6 How., 301; *Fletcher* v. *Peck*, 6 Cranch, 132; 3 Parsons on Contracts, 532.—3d. The company is a citizen of this state and like any other citizen is entitled to the equal protection of the laws of the state and of the United States, and especially that protection thrown around a citizen of the United States by the 14th amendment of the constitution of the United States. *Louisville &c. R. R. Co.* v. *Letson*, 2 How., 497; *R. R. Tax Cases*, 13 Fed. Rep. 722; *Southern Pacific R. R. Co.* v. *California*, 118 U. S. R., 109; *Santa Clara County* v. *Southern Pacific R. R. Co.*, id., 394.—4th. The statute of 1881 does not pretend to take the property of the company for a public use. The fact that it does not provide for compensation would be fatal to any such claim if made.—5th. Though the charter is subject to alteration, amendment and repeal by the General Assembly, the act of 1881 is not such an alteration or amemdment. See argument and opinion in *State* v. *N. Haven & Northampton Co.*, 43 Conn., 351.—6th. If the statute be properly a police regulation, the legislature would have full power to enact it, whether the charter were a close one, or subject to alteration or amendment. Pierce on Railroads, 460; *People* v. *Boston & Albany R. R. Co.*, 70 N. York, 569.—7th. Down to the enactment of this statute no railroad corporation in this state could have been held responsible in damages for a fire communicated by one of its locomotive engines, without showing either malice, negligence, or such a wanton disregard of the rights of others as to amount to malice. 1 Black. Com., 431; Pierce on Railroads, 431; *Morris* v. *Platt*, 32 Conn., 86; Cooley on Torts, 591; *Clark* v. *Foot*, 8 Johns., 421; *Losee* v. *Buchanan*, 51 N. York, 487.—8th. The enactment of this statute can in no sense be considered the establishment of a rule of law, changing the common law, as to where thereafter the loss occasioned by accidental fires should fall. The fact that it was confined in its operation to railroads, would be fatal to any such claim. 1 Black. Com., 45; Webster in *Dartmouth College Case*, 4 Wheat.,

518; Cooley on Const. Limit., 353, 390; *Chicago &c. R. R. Co.* v. *Moss*, 60 Miss., 641.—9th. Within proper limitations and due regard for the rights of all, fire is a subject matter within the police regulation of the state. For example— the establishment of fire limits; the destruction of property to prevent spreading of fire, etc.

We submit that these propositions and concessions bring us face to face with the only question that can be successfully raised in this branch of the case. Can the legislature, under a legal exercise of the police power, say that a railroad company shall be responsible in damages for fires communicated by its locomotives, irrespective of the question whether it has been guilty of a neglect of duty or not?

In what do the police powers of the state consist? Blackstone (4 Comm., 162,) defines the public police as "the due regulation and domestic order of the kingdom, whereby the inhabitants of a state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations." To the same effect see Bentham's General View of Public Offences, (Works, part 9, p. 157;) Cooley's Principles of Const. Law, 209; Cooley's Const. Limitations, 577; *State* v. *N. Haven & Northampton Co.*, 43 Conn., 378; *Commonwealth* v. *Alger*, 7 Cush., 84; *Thorp* v. *Rutland & Burlington R. R. Co.*, 27 Verm., 149; *Munn* v. *Illinois*, 94 U. S. R., 145; *Beer Co.* v. *Massachusetts*, 97 id., 33. But SHAW, C. J., in *Commonwealth* v. *Alger*, says that the police power must not be "repugnant to the constitution." And EARL, J., in *Matter of Jacobs*, 98 N. York, 110, says: "These citations are sufficient to show that the police power is not without limitations, and that in its exercise the legislature must respect the great fundamental rights guaranteed by the constitution." And Cooley, in his Principles of Const. Law, 388, says:—"All property and rights within the jurisdiction of the state, are subject to the regulations and restraints of its police power, except so far as they are removed therefrom by the express provisions

or implications of the federal constitution." And Potter, in his Dwarris on Statutes, 458, says:—" The limit to the exercise of the police power can only be this: the legislation must have reference to the comfort, the safety, or the welfare of society; it must not be in conflict with the provisions of the constitution." See also *Austin* v. *Murray*, 16 Pick., 121, '126; *Coe* v. *Schultz*, 47 Barb., 64; *People* v. *Marx*, 99 N. York, 377, 386; *State* v. *Noyes*, 47 Maine, 189; *Slaughter House Cases*, 16 Wall., 36, 87.

Strictly speaking, the words of this statute do not bring it within the legitimate objects regarding which the police power of the state may be exercised. It does not require of railroads the use of spark arresters, or any other device to prevent the escape of fire, and as a penalty impose an obligation to pay for all damage occasioned thereafter by fire. It is not a statute for the better protection of property. It simply imposes on the railroads an absolute liability. It requires nothing; it suggests nothing for the better protection of property; it simply shifts the burden of the loss from where for all time it has rested, on to others.

The real object of the statute is simply an incitement to carefulness on the part of people engaged in the railroad business, by holding over their heads pecuniary loss; and yet it does not grant an immunity in cases where care has been exercised, for it declares they must suffer the same pecuniary loss in either case. And it holds them to the same responsibility for the malicious act of an employee or of a stranger. Even the act of God, provided the proximate cause of injury was "a fire communicated by a locomotive engine," would not relieve the defendant corporation from responsibility.

But if, under its police powers, the state has a right to vary the common law rule, and hold people responsible in damages for fires accidently originating on their premises, as a legal police regulation it must apply to all alike. A statute which discriminates between classes of individuals is for that reason void. *Chicago &c, R. R. Co.* v. *Moss*, 60

Miss., 641; *Alabama R. R. Co.* v. *Morris*, 65 Ala., 193; *Durkee* v. *Janesville*, 28 Wis., 464.

But, notwithstanding the statute is not a legal police regulation, it would still be a law binding on the defendant corporation, unless it in some way interferes with the rights secured by the constitution of the United States and of this state. What then are the rights secured by the constitution to all citizens and corporations? The legislature cannot—(*a.*) Interfere with the obligations of contracts. U. S. Const., Art. 1. § 10.—(*b.*) Nor deprive any person of life, liberty or property without due process of law. Vth Am. to U. S. Constitution.—(*c.*) Nor take private property for public use without just compensation. XIVth Amendment to U. S. Const. Also Art. 1, Sec. 2, State Constitution.— (*d.*) Nor deny to any person within its jurisdiction the equal protection of the laws. XIVth Amendment to U. S. Const.—(*e.*) Nor deprive one of life, liberty or property but by due course of law. State Constitution, Art. 1, § 9. And (*f.*) all courts shall be open and every person for an injury done to him in his person, property or reputation, shall have remedy by due course of law and right, and justice administered without sale, denial or delay. State Const., Art. 1, § 12.

Railroads are quasi-public corporations. They take the place of and perform for the government certain governmental functions. In respect to matters strictly and properly *publici juris* the power of the legislature is very great; but there are certain matters which by reason of the fact that they are *public,* cannot be taken away from or interfered with, except upon just compensation. The right to run by the use of fire and steam is one of these. The defendant railroad not only *may* run, but it *must* run. The state compels it to run. *State* v. *Hartford & N. Haven R. R. Co.*, 29 Conn., 538. As it may and can only run by the use of fire and steam, it may use fire and steam, for it could not run without them. The manner of its using fire and steam may, under proper circumstances and for proper objects, be regulated, but a regulation which amounted to a

prohibition would be void. A regulation which partially permitted their use, would impair their full power to use, and hence would be equally void. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. R., 650. But again. Railroads, inasmuch as they are built by private capital, in their relation to their stockholders, the property owned by them, and their income, are *privati juris*, and subject to the same limitations, and invested with the same security as the private property of an individual. *Benson* v. *Mayor &c. of New York*, 10 Barb., 245 ; *Commonwealth* v. *Penn. Canal Co.*, 66 Penn. St., 41 ; *Chicago, Bur. & Q. R. R. Co.* v. *Att'y Gen.*, 9 Western Jurist, 347. What we have said about the defendant's right to run, and to use fire and steam as the only possible means of running, applies with still greater force to those private rights. The state has contracted with the defendant that it may run ; may use fire and steam ; may receive an income from running. Mr. Justice STORY, in the *Dartmouth College case*, 4 Wheat., 518, says :—" In my judgment it is perfectly clear that any act of a legislature which takes away any powers or functions vested by its charter in a private corporation or its officers, or which restrains or controls the legitimate exercise of these, or transfers them to other persons without its assent, is a violation of the obligation of that charter." Mr. Justice WASHINGTON, in *Green* v. *Biddle*, 8 Wheat., 84, says :—" The objection to a law on the ground of its impairing the obligation of a contract, can never depend on the extent of the change which the law effects in it. Any deviation from its terms by postponing or accelerating the period of performance, imposing conditions not expressed in the contract, or disposing of those which are, however minute or apparently immaterial in their effect upon the contract or the parties, impairs its obligation." Even the essential right of taxation may be taken away from the state by the charter granted to a railroad, and any subsequent attempt to tax it would be a violation of the contract between the state and the company. *New Jersey* v. *Yard*, 95 U. S. R., 104 ; *Farrington* v. *Tennessee*, id., 679 ; *Humphrey* v. *Peques*, 16 Wall.,

244; *Pacific R. R. Co.* v. *Maguire*, 20 id., 36. A charter granting the exclusive right to a company to do a certain thing, even though it be a matter of public concern, is violated by giving another company the same privilege. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. R., 650; *Boston & Lowell R. R. Co.* v. *Salem & Lowell R. R. Co.*, 2 Gray, 1.

But again, the constitution provides that no citizen shall have his property taken away from him without *due process of law*, or due course of law. Mr. Webster's definition in the Dartmouth college case is, "By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society." Cooley, in his Const. Limitations, 357, says:— "There is no rule or principle known to our system under which private property can be taken from one person and transferred to another, for the private use and benefit of such other person, whether by general law or by special enactment." Can the money of the stockholders of the defendant corporation be given by law to one who shall suffer from a fire, the kindling of which they were guilty of no carelessness or malice in causing, and in regard to which, though they may have conclusive evidence that it was caused by an inevitable accident, the statute says in effect that they shall not be permitted to introduce it, and that money said to be taken *by due process of law?* Is there no such thing in law as "*damnum absque injuria?*" Cooley's Const. Lim., 319. To the same effect are the following cases: *Wright* v. *Cradlebaugh*, 3 Nevada, 341; *Taylor* v. *Porter*, 4 Hill, 140, 145; *Ohio & Miss. R. R. Co.* v. *Lackey*, 78 Ill., 55; *McCready* v. *Sexton*, 29 Iowa, 366, 391; *People* v. *Haws*, 37 Barb., 440; *Zeigler* v. *Alabama R. R. Co.*, 58 Ala., 594; *Mayor &c.*, v. *Thorne*, 7 Paige, 261.

These cases cited to show that the statute under consideration is void, because it takes the property of the railroad

without due process of law, apply with still greater force, we claim, to the last clause of the first section of the fourteenth amendment to the constitution of the United States, which forbids any state to deny to any person within its jurisdiction the "equal protection of the laws." If a private individual cannot be held responsible for accidental fires, all citizens within this state have a right to demand the same protection. *Slaughter House Cases,* 16 Wall., 36 ; *R. R. Tax Cases,* 13 Fed. Rep., 722 ; *Southern Pacific R. R. Co.* v. *California,* 118 U. S. R., 109 ; *Santa Clara County* v. *Southern Pacific R. R. Co.,* id., 394 ; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 id., 650 ; *Davis* v. *Minge,* 56 Ala., 121 ; *Zeigler* v. *Alabama R. R. Co.,* 58 id., 594 ; *Wantlan* v. *White,* 19 Ind., 470 ; *White* v. *Flynn,* 23 id., 46 ; *Groesbeck* v. *Seeley,* 13 Mich., 330, 342 ; *In re Jacobs,* 98 N. York, 98 ; *People* v. *Marx,* 99 id., 377 ; Blackwell on Tax Titles, 100 ; Cooley's Const. Lim., 368.

*J. S. Turrill,* for the appellee.

LOOMIS, J. This action is founded on the statute of 1881, (Session Laws of that year, ch. 92,) the first section of which is as follows :—" Where an injury is done to a building or other property of any person or corporation by a fire communicated by a locomotive engine of any railroad corporation, without contributory negligence on the part of the person or corporation entitled to the care and possession of the property injured, the said railroad corporation shall be held responsible in damages to the extent of such injury, to the person or corporation so injured; and any railroad corporation shall have an insurable interest in the property for which it may be so held responsible in damages along its route, and may procure insurance thereon in its own behalf."

The plaintiff was the owner and possessor of land adjoining the defendant's railroad track in the town of New Milford, and certain of his fences, growing trees and herbage thereon were destroyed by fire communicated by the defendant's locomotive engine. There was no contributory negligence

on the part of the plaintiff, and he brought this suit to recover damages for the injury received and obtained a verdict in his favor in the court below.

The defendant gives six distinct reasons for his appeal to this court, but none of them can avail to set aside the plaintiff's verdict if the statute is valid, and can be construed to cover the property injured. Our discussion therefore will be confined essentially to these two points :—

1. Is the statute a valid one ?

The defendant's counsel in his argument presented a powerful arraignment of the statute as denying to railroad corporations the equal protection of the laws, in that it makes them liable for the consequences of a lawful act without any fault or negligence, and as taking away their property without due process of law, in that it deprives them of a legal defense, and as impairing the rights given them by their charters, which authorize the use of fire, steam and locomotive engines, while requiring trains to be run for the benefit of the public, for the unavoidable consequences of which acts the statute makes them liable. The several counts in this indictment seem to be based principally upon this one principle of the common law, that for a lawful, reasonable and careful use of property the owner cannot be made liable.

But this principle is not so wrought into the constitution or into the very idea of property that it cannot be departed from by the legislature where protection to persons or property may require it.

But the defendant also invokes another principle, which it is claimed the statute violates ; namely, the equal protection of the law. But to give force to this objection it should appear that a burden is cast on railroad corporations from which all others are exempt under similar circumstances. There can of course be no such inequality if the circumstances are radically different. This consideration seems to have been ignored in the argument for the defendant, or else it was erroneously assumed that the circumstances were

similar. Some of the cases cited in behalf of the defendant will illustrate the distinction to which we refer.

In *Durkee* v. *City of Janesville*, 28 Wis., 464, an act had been passed providing that the city of Janesville should be holden to pay no costs in any action brought against it to set aside any tax assessment or tax deed or to prevent the collection of any tax. The act was held void, because it exempted one corporation by name from a burden from which no other was exempt under like circumstances, and it enabled the city to recover its own costs if it recovered judgment, but denied it to the other party to the same litigation in case judgment was recovered against the city. So in *Ohio & Miss. R. R. Co.* v. *Lackey*, 78 Ill., 55, an Illinois statute was held unconstitutional and void which made the railroad company liable for all the burial expenses and coroner's fees incurred, where anyone happened to die or be killed in any way in the cars of such railroad. This act attempted to make the company liable though a person might die from a mortal sickness which was upon him when he entered the car, or by his own hand, or in other ways in regard to which the company would have no agency whatever. The distinction between such a case and the one at bar is too manifest to require further comment.

The only case cited which supports the defendant's position in the least, is the case of *Zeigler* v. *South Alabama R. R. Co.*, 58 Ala., 594, where a statute of that state was held unconstitutional which declared that railroad corporations should be liable and make compensation to the owner for all damage to live stock caused by their locomotives or trains, without any reference to the skill or diligence with which the train was operated, unless there was some contributory negligence on the part of the owner other than permitting the stock to run at large. There might be a difference of opinion in different jurisdictions as to the validity of such legislation. But assuming, for the sake of argument, that the decision was right, there is an important distinction between the two cases. There the animals injured were where they ought not to have been—trespassers

obstructing the defendant's railroad track, directly exposing the defendant's property to hazard and loss; here, the property injured was where it ought to have been, on the plaintiff's own premises, occasioning no hazard to the railroad company. There, too, it was possible for the owner to have kept his stock on his own premises where they would have been safe; but here it was not possible for the plaintiff to avoid the loss that he suffered by any act of his own.

It is a mistake to suppose that it necessarily transcends the limits of valid legislation, or violates the principle of a just equality before the law, if the one using extra-hazardous materials or instrumentalities, which put in jeopardy a neighbor's property, is made to bear the risk and pay the loss thereby occasioned, if there is no fault on the part of the owner of the property, even though negligence in the other party cannot be proved. If the statute should make the owner of a vicious domestic animal liable for the damage it might occasion, without proof of *scienter*, or knowledge of its vicious propensity, as required by the common law, we do not think the act would be void. Such a statute would only be a new application of an ancient common law principle, that where one of two innocent persons must suffer loss from an act done, it is just that it should fall on the one who caused the loss rather than upon the other who had no agency in producing it and could not by any means have avoided it.

An ancient statute of this state, which has been very often enforced, makes the owner of dogs, or if the owner is a minor or an apprentice, the parent, guardian or master, liable for all the damage done by them, irrespective of any fault or negligence on the part of the owner. Gen. Statutes, p. 267, sec. 5. Another statute (Gen. Statutes, p. 489, sec. 6,) makes one who kindles a fire on his own or any land, liable for all damage it may do if it runs upon the land of another, and proof of negligence is not required. We are not aware that the validity of any of these statutes has been called in question. The dangerous character of the thing used is always to be considered in determining the

validity of statutory regulations fixing the liability of parties so using it.   Fire has always been subject to arbitrary regulations, and the common law of England was more severe and arbitrary on the subject than any statute.   In Rolle's Abridgement (Action on the Case, B, title *Fire,*) it is said: "If my fire by misfortune burns the goods of another man he shall have his action on the case against me.   If a fire breaks out suddenly in my house, I not knowing it, and it burns my goods and also my neighbor's house, he shall have his action on the case against me.   So if the fire is caused by a servant, or a guest, or any person who entered the house with my consent.   But otherwise if it is caused by a stranger who enters the house against my will."

It ought perhaps to be stated that this has not been adopted as the common law rule in the United States.   In most states, we presume, there are arbitrary police regulations concerning the transportation or deposit of gun powder.   Would the constitutionality of a statute be questioned that should make one who deposits large quantities of gunpowder or dynamite on his own premises, in dangerous proximity to the property of another, liable for any loss thereby occasioned to the latter without proof of negligence?

There is no force in the objection that the statute under consideration unjustly selects only railroad corporations to bear the burden of an extraordinary risk.   It is confined to them because they alone have the privilege of taking a narrow strip of land from each owner, without his consent, along the route selected for the track, and of traversing the same at all hours of the day and night, and at all seasons whether wet or dry, with locomotive engines that scatter fire along the margin of the land not taken, thereby subjecting all combustible property to extraordinary hazard of loss, and that too for the sole profit of the corporation.   The argument for the defendant is fallacious in erroneously assuming that the statute denies to the defendant a good defense which at common law all others would have under similar circumstances.

In *Jones* v. *Festiniog Railway Co.*, Law Rep., 3 Queen's

Bench, 733, in a suit against an unchartered railway company, it was proved by the defendants that all reasonable precautions had been taken to prevent the emission of sparks from a locomotive engine used by them. But it was held, nevertheless, that they were liable on the ground that the locomotive was a dangerous engine to be brought and used by the defendants even upon their own premises, and that they must bear the consequences in case of damage to others. Wharton, in his treatise on Negligence, § 868, lays down the same doctrine as to the liability of unchartered companies at common law.

How then can it transcend the limits of just and valid legislation to attach to chartered railroad companies, for doing the same act, under the same circumstances, the same liability, where the charter, as in this case, is an open one, expressly made subject to all general laws?

In *Hooksett* v. *Concord R. R. Co.*, 38 N. Hamp., 242, where the construction of a similar statute was under consideration, EASTMAN, J., in giving the opinion of the court, used this suggestive language: " The extraordinary use of the element of fire by which the property of individuals situated along the lines of railroads becomes endangered beyond the usual and ordinary hazard to which it is exposed, no doubt caused the legislature to interfere. * * * By this exposure an increased risk of loss of property is caused. The risk must be borne by some one; and if the property is insured, a larger premium must be paid. Upon whom shall this risk fall and this burden rest? Upon the owners of the property, or upon the corporations who make this extraordinary use of the fire?"

The only answer, it seems to us, which a due sense of justice can dictate, is the one given in that case—that the responsibility and burden should rest on the corporations. No other mode of adjusting this risk can be suggested so just towards all parties as this. Before the statute, upon taking land for railroad purposes, it was possible upon the appraisal to include something for the increased risk to buildings on the land not taken, confining it however to

the diminished value of the remaining property caused by the risk. Pierce on Railroads, 215; *In re Utica &c. R. R. Co.*, 56 Barb., 456; *Wilm. & Reading R. R. Co.* v. *Stauffer*, 60 Penn. St., 374. But it would seem extremely difficult to make any just appraisal even on this limited basis; and it could have no application to buildings afterwards placed on the land, nor to buildings which might be destroyed by fire from this source on land more remote from the railroad, no part of which was taken or appraised, nor to any personal property whatever. And it would of course be utterly impracticable to assess beforehand damages for property that might be destroyed in the future.

And here we may suggest that the statute under consideration, though often characterized as arbitrary, is really based on a principle quite similar to that which allows an assessment in favor of the land-owner founded on the risk of fire from the same source. In both cases it is assumed that there is a risk and that it is justly placed on the corporation. The statute carefully guards the interests of the corporations by giving them an insurable interest in all the property for which they may be made liable, and section fourth provides that no appraisal of damages for land taken or injured by the location or construction of a railroad shall hereafter include any compensation for the increased risk to any building outside of such location, on account of sparks from the locomotive engines on such railroad.

This last provision suggests that the statute is not quite so equitable in its application to the defendant company, which established its railroad before the statute was enacted, as to corporations afterwards formed. It can of course derive no benefit from this provision except as to land it may have taken since the enactment of the statute. The record is silent as to when the land in question was taken or whether or not anything was at the time included or claimed as damages on account of the risk from fire to the property now owned by the plaintiff. No question founded on these facts was made in the court below, and of course is not to be entertained in this court for the purposes of decision.

Wo may however remark as to the general provisions of the statute, that if they are valid as to railroads to be established, they may be equally so as to railroads already in existence. The defendant's charter not only contains an explicit reservation for the legislature to alter, amend or repeal it, but makes it also in terms subject to all general laws the legislature may thereafter pass. And as to any defense suggested by the assumption that an appraisal of the general risk from fire may have been made to the plaintiff originally or his grantor, while we reserve a final decision of the question for the case in which it properly arises, we may here suggest that where the original appraisal only gave damages to the extent that the property was diminished in value in consequence of the risk, and the same property is afterwards destroyed, the damages to be recovered under the statute would of course only represent the remaining or diminished value, so that the statute cannot properly be charged with allowing double damages for the same thing.

In other jurisdictions the original appraisal and the indemnity provided by the statute have not been considered so inconsistent as that both might not exist together. *Pierce* v. *Worcester & Nashua R. R. Co.*, 105 Mass., 199; *Bangor &c. R. R. Co.* v. *McCombe*, 60 Maine, 290; *Adden* v. *White Mt. R. R. Co.*, 55 N. Hamp., 413; *Lyman* v. *Boston & Wor. R. R. Co.*, 4 Cush., 288.

In further confirmation of our reasoning as to the validity of the statute we make the following citations:—

Redfield, in his treatise on the Law of Railways in the first edition, page 360, published in 1857, alluding to the statutes similar to the one under consideration, said:—" We cannot forbear to add that the interference of the legislatures upon this subject in many of the American states, seems to us an indication of the public sense in favor of placing the risk in such cases upon the party in whose power it lies most to prevent such injuries occurring." In Pierce on Railroads, p. 444, it is said:—"Statutes have been enacted making the company liable even in the absence

of negligence, for injuries to private property caused by fire communicated by its engines, which in effect make it an insurer in case of such injury.   These statutes are constitutional, even when applied to pre-existing corporations."   In 2 Wood's Railway Law, sec. 331, it is said:—" In some states railway companies are made liable, irrespective of the question of negligence, for fires set by their engines, and as a compensation for this extraordinary liability are given an insurable interest in such property; and these statutes have been held constitutional, even in their application to corporations established before the statute was passed, and although damages for the risk of fire were considered when the land was taken."   In the well-considered case of *Rodemacher* v. *Milwaukee & St. Paul R. R. Co.*, 41 Iowa, 297, the court discussed at length the constitutionality of a provision of the code of that state, that " any corporation operating a railway shall be liable for all damages by fire that is set out or caused by the operating of any such railway," and fully sustained the act, even as applicable to pre-existing railways.

The counsel for the defendant in the case at bar sought to impair the force of the decision by reason of the fact that in Iowa the code had entirely supplanted the common law. The distinction seems to us not well taken.   The legislature surely could acquire no additional power by exercising its sovereign will twice, first in abolishing the common law, and then in enacting the statute.   And the objection as to inequality before the law so persistently urged against our statute applies with equal force to the provision of the Iowa code, for that applies exclusively to railway corporations, the same as our statute.

In *Lyman* v. *Boston & Worcester R. R. Co.*, 4 Cush., 290, it was held that a similar statute in Massachusetts was applicable to railroads established before as well as since its passage, and that it extended as well to estates a part of which is conveyed by the owner as to those of which a part is taken by authority of law.   The constitutionality of the statute was not discussed, but the principles stated as constituting its

foundation directly apply. DEWEY, J., in delivering the opinion on p. 291, said:—"We consider this one of those remedial acts passed for the more effectual protection of property against the hazards to which it has become subject by the introduction of the locomotive engine. The right to use the parcel of land appropriated to a railroad does not deprive the legislature of the power to enact such regulations, and impose such liabilities for injuries suffered from the mode of using the road, as the occasion and circumstances may reasonably justify." This reasoning clearly makes the legislation in question a legitimate exercise of the police power of the state. See also the comments of SHAW, C. J., in delivering the opinion in *Hart* v. *Western R. R. Corp.*, 13 Met., 105, and of BIGELOW, C. J., in *Ross* v. *Boston & Wor. R. R. Co.*, 6 Allen, 90.

2. The remaining question relates to the construction of the statute. Do the words "other property" embrace fences, growing trees and herbage, the property injured in this case?

The entire description in the statute is "building or other property," and the defendant invokes the benefit of the principle of interpretation known as "*noscitur a sociis*," that is, that the particular word "building," being followed by the general words "or other property," the latter only includes subjects "*ejusdem generis*."

This rule has been often recognized and applied, but we think its application to this case would work injustice and tend to defeat in part the object of the statute. The statute is clearly remedial, and ought to be construed liberally to effectuate the intention of the legislature, which was to give the owners of property along the route of the railroad indemnity for the loss of all property that might reasonably be said to be exposed to danger from the source referred to. And besides, the above maxim would be exceedingly difficult of application unless the words "other property" should be entirely rejected. The hay, grain, farming tools and live stock in a barn, the goods in a store, the personal property in a house or factory, would hardly be *ejusdem*

*generis* with a "building;" and can it be possible that the legislature intended only a partial indemnity for the building alone, overlooking the greater value of property within and without?

Then as to growing trees, the legislature would have in view the fact that railroads traverse the forests as well as the open fields, and that, by reason of the annual deposit of dry leaves, the former were peculiarly exposed to danger from fire; and again we ask—can it be supposed that in framing a general act of indemnity the owners of this species of property were not to be included?

There is some disagreement as to the construction of this language as used in similar statutes in other jurisdictions, but in no instance has such property as was injured in this case been excluded. In the state of Maine it is extended to all property having a permanent location along the route, such as buildings and their contents, fences, trees and shrubbery, but it is held not to extend to a pile of cedar posts temporarily deposited near the railroad. *Chapman* v. *Atlantic & St. Lawrence R. R. Co.*, 37 Maine, 92; *Pratt* v. *Same*, 42 id., 579.

But it is said that a proper interpretation of the language we have been considering cannot be reached without first determining whether the railroad company could have procured insurance on the property injured. The argument in brief is, that, as the statute gives a railroad company an insurable interest in all the property for which it may be made liable, it cannot be made liable where no insurance could have been obtained. Hence in this case a witness was offered to testify that he knew of no insurance company that would insure fences, growing trees and herbage. This testimony was rejected, and this is made a distinct ground of error; but, as we stated at the outset, it depends upon the construction of the statute and requires no separate consideration.

The statute would be extremely uncertain if its enforcement depended on the ability of the railroad company to obtain insurance. The withdrawal of insurance companies

from issuing policies in a particular state, owing to un-friendly legislation or an alteration of their charters, might in effect nullify the law as to railroads in that state.

Undoubtedly the statute confers an insurable interest co-extensive with the property for which the railroad company may be responsible, and gives liberty to obtain such insur-ance in its own name with any other party who is able and willing to contract relative to the subject matter. If there was an inherent impossibility of obtaining insurance upon any particular species of property, the argument would have more force, but there is no such impossibility. It is a mat-ter of common information that the scope and subject mat-ters of insurance are being extended constantly in all direc-tions, so that now there are insurance companies that issue policies of insurance against a great variety of hazards, both physical and moral. The reason for conferring this insura-ble interest upon the railroad companies will further illus-trate its meaning and effect. Before the statute the risk from fire was upon the owner of the property, and he alone had an insurable interest, but as the statute shifted the risk from the owner to the railroad company, it also, as a matter of justice and equity, conferred upon the latter the insura-ble interest, with the right to obtain in its own name such insurance. The corporation now has the same capacity to contract for insurance that the owner had before. All that is needed to make a valid contract is a corresponding ca-pacity on the part of some other corporation or individual. The statute however does not concern itself with the last named party.

In Massachusetts a statute containing the same language as to the description of the property and insurance, has been construed to include all kinds of combustible property, real and personal, even where the corporation had no knowl-edge or reasonable cause to believe that there was property situated where it was exposed to injury. *Ross* v. *Boston & Worcester R. R. Co.*, 6 Allen, 87. In *Trask* v. *Hartford & New Haven R. R. Co.*, 16 Gray, 71, a part of the property injured consisted of a fence, and HOAR, J., in delivering

the opinion of the court, said:—"A fence is not so commonly insured probably because its value and risk do not make insurance desirable; but it certainly can be insured. Whether a just construction of the statute of 1840 would require any limitation of the extremely comprehensive language used to define the liability of railroad corporations created by it, this case gives us no occasion to consider. We certainly do not intend to intimate, by putting our decision upon the ground above stated, that the property must be insurable, in the ordinary or commercial sense of that word, to make the corporation liable." In the state of Maine the clause in their statute relative to insurance has been applied in the construction of the statute so as to restrict its operation to such property, real or personal, as has some permanent location along the route of the railroad, because, as they say, it would not otherwise be practicable to obtain insurance, but as we have seen the courts of that state find no difficulty at all in extending the statute to fences and growing trees. *Chapman* v. *R. R. Co.*, and *Pratt* v. *R. R. Co.*, before referred to.

For the foregoing reasons we conclude that there was no error in the judgment complained of.

In this opinion the other judges concurred.