NEW HAVEN METAL & HEATING SUPPLY COMPANY *v.*
CORNELIUS J. DANAHER, ADMINISTRATOR.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 6—decided July 15, 1941.

*Max H. Schwartz*, with whom, on the brief, was *Alexander Winnick*, for the plaintiff.

*Harry Silverstone*, assistant attorney general, with whom, on the brief, was *Francis A. Pallotti*, attorney general, for the defendant.

BROWN, J. Upon the plaintiff's appeal to the Superior Court from the assessment of a contribution by the defendant under the Unemployment Compensation Act, the court, upon a stipulation of facts, reserved the case for the advice of this court upon three questions: first, whether the so-called common control provision of General Statutes, Cum. Sup. 1939, § 1335e, violates the state constitution; second, whether it violates the federal constitution; and third, whether the defendant erred in determining that the plaintiff is liable under the act and in making the assessment thereunder as set forth in the stipulation.

The defendant is the administrator of the act. The

plaintiff is a Connecticut corporation located at 469 Congress Avenue in New Haven where it conducts the business of selling plumbing and heating supplies. Prior to April 20, 1937, the plaintiff's business also included the selling of paint supplies at 463-465 Congress Avenue under the trade name of the "Yale Paint Company," and in the conduct of the business as so operated the plaintiff employed more than five persons, was subject to the act and made payments into the unemployment compensation fund as required by law. On April 20th, the plaintiff transferred the paint supply business to George and Yale Oppenheim, doing business as the Yale Paint Company; thereafter doing business under this name they continued to employ in the paint business the same employees formerly employed by the plaintiff during the time it had carried it on; and they have since conducted this business at 463-465 Congress Avenue in a store located in the same building with the store at 469 Congress Avenue, but separate from it. On and after April 20, 1937, the plaintiff employed less than five persons and on June 30, 1938, not having had as many as five employees for as many as twenty weeks during the preceding fifteen months, upon its request it was released by the defendant from liability under the act. On July 1, 1939, the plaintiff's capital stock consisted of one thousand shares, of which George and Yale Oppenheim, who are the same persons comprising the partnership doing business as the Yale Paint Company, each owned four hundred and ninety, and Rebecca and Elizabeth Oppenheim each ten. For twenty weeks subsequent to July 1, 1939, the plaintiff employed four persons. During the same period the Yale Paint Company employed for the first four weeks after July 1st two persons, for the next eight weeks three, and for the next fourteen weeks four.

The defendant determined that the plaintiff became liable under the act at the end of the twentieth week after July 1, 1939, to wit, on November 12, 1939, and made an assessment for contributions and interest for the fourth quarter of 1939 and the first and second quarters of 1940, aggregating $382.32. In determining that the plaintiff had five or more employees in its employment, the defendant counted, in addition to its employees, those of the Yale Paint Company. The amount of the assessment in question is predicated upon the wages paid by the plaintiff to its own four employees for the three quarterly periods specified.

The provision of § 1335e referred to, the constitutionality of which is challenged under the first and second questions submitted, provides: "In determining whether an employer in question shall be considered, for the purposes of this section, as having had five or more employees in his employment at a given time, there shall be counted, in addition to his own employees, if any, (a) the employees of each employer whose business was at the given time owned or controlled, directly or indirectly, by the same interests which owned or controlled the business of the employer in question, . . ." Pursuant to its general scheme the Unemployment Compensation Act (General Statutes, Cum. Sup. 1939, Chap. 280a, §§ 1334e-1349e) provides for the creation of a fund by employers' involuntary contributions, out of which employees who lose their jobs may, after a waiting period, be paid certain benefits while looking for work but unable to find it. *Waterbury Savings Bank* v. *Danaher*, 128 Conn. 78, 82, 20 Atl. (2d) 455. The obligation to pay the contributions prescribed in § 1336e, is made applicable by the terms of § 1335e to every employer who has "five or more employees in his employment." Section 1335e, however, also con-

tains the so-called common control amendment (Public Acts, 1939, Chap. 310, § 3), which is the enactment above quoted and here under attack. Its effect is to render an employer of less than five subject to the act if and when the interests which either own or control such employer's business also own or control some other business, and the total number employed by both businesses is five or more, although each employing unit becoming subject to the act under this provision is separately liable for contributions under § 1336e in respect to the wages paid to its own employees only. As its wording makes clear, this provision is of no effect in a case where neither common ownership nor common control is involved. The word "control" as well as the word "ownership" are frequently used in statutes and both have a sufficiently definite meaning so that they can be given effect by the courts in accordance with the legislative intent expressed in them. See *Commissioner of Internal Revenue* v. *Richfield Oil Co.*, 42 Fed. (2d) 360, 361; *Rochester Telephone Corporation* v. *United States*, 23 Fed. Sup. 634, 636.

We are asked to advise whether, upon the stipulated facts, the defendant erred in making the assessment. It is not stipulated that the plaintiff corporation and the partnership of George and Yale Oppenheim, doing business as the Yale Paint Company, were "at the given time owned or controlled, directly or indirectly, by the same interests. . . ." The decision whether there was common ownership or control would be a conclusion of fact, to be reached upon the basis of the subordinate facts stipulated and reasonable inferences to be drawn from them. It is not the proper function of this court to adjudicate such an issue. We must, therefore, decline to answer this question. We can, however, properly say this: It appears from the stip-

ulation that the plaintiff originally owned and conducted both the plumbing and the paint business, that after it had sold the latter to the two Oppenheim partners no change was made in the name, location or employees of either business, and that the two partners were the owners of 98 per cent of the plaintiff's outstanding stock. These facts, unqualified and uncontradicted, with the reasonable inferences which might be drawn from them, might well justify a conclusion that there was in fact common control of the two businesses; nor are we prepared to say that the ownership of the few shares standing in the names of the two women, each having the same surname as that of each of the partners, would prevent a reasonable inference that the partners were the real owners of these shares. Although we cannot give advice which will necessarily determine the judgment to be entered in this case, we may properly answer the other questions asked, because they will necessarily be involved in the decision of the case and their present determination is clearly in the interests of simplicity, directness and economy of judicial action. Practice Book, § 421.

The plaintiff's principal contention is that the provision is unconstitutional because it violates the equal protection clause of the state and federal constitutions. More concretely it argues that this clause is violated because under the statute other persons engaged in the same, similar, or different businesses, employing like the plaintiff but four employees, are not subject to the tax, compelling it to carry a burden these others are not obliged to bear either in the payment of this or of other taxes of equivalent burden. This presents for determination the question whether the classification made by the statute is arbitrary, unreasonable and unjustified. The applicable legal principles are well settled. "The equal protection of the

laws is accorded when all persons similarly situated are accorded 'equal protection under the law in the enjoyment of rights belonging to all.' *State* v. *Travelers Ins. Co.,* 73 Conn. 255, 269, 47 Atl. 299; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369, 6 Sup. Ct. 1064; *Grissell* v. *Housatonic R. Co.,* 54 Conn. 447, 9 Atl. 137." *State ex rel Brush* v. *Sixth Taxing District,* 104 Conn. 192, 200, 132 Atl. 561. The provisions of the Fourteenth Amendment to the Constitution of the United States, guaranteeing the equal protection of the laws and due process of law, have substantially the same meaning as the corresponding provisions contained in §§ 1 and 12 of Article First of our constitution and, therefore, imposed no new limitation upon the power of the people of this state to determine their civil rights by their fundamental law. Neither of these constitutional provisions requires taxation to be equal and uniform, or prevents classification for the purposes of legislation. The classification must, however, "be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy." *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415, 40 Sup. Ct. 560; *Madden* v. *Kentucky,* 309 U. S. 83, 88, 60 Sup. Ct. 406; *Montgomery* v. *Branford,* 107 Conn. 697, 707, 142 Atl. 574; *State* v. *Travelers Ins. Co.,* supra, and see p. 278; *State, ex rel Brush* v. *Sixth Taxing District,* supra, 201. The legislature has a wide range of discretion in making classifications and primarily this question is one for it and the courts will not interfere unless the classification is clearly unreasonable. *Silver* v. *Silver,* 108 Conn. 371, 378, 143

Atl. 240, 280 U. S. 117, 123, 50 Sup. Ct. 57; *Second National Bank of New Haven* v. *Loftus,* 121 Conn. 454, 460, 185 Atl. 423.

Applying these principles, since the formula established by the statutory provision in question applies to all employers similarly situated, that is, to all employers whose businesses are under common ownership or control, the question is resolved to whether the classification has a fair and substantial relation to the object of the legislation. If it has, it is valid. If it has not, it is arbitrary, unreasonable and capricious, and therefore void. It is apparent from the plan embodied in the act, as already stated, that its primary object is to relieve against the distress of unemployment, and that the imposition of the tax upon employers is incidental. The explicit provisions of § 1346e(a), designed to render impossible the defeat of this object either through agreement by the employee or act of the employer, confirm this fact. Pursuant to the act's basic scheme of paying benefits to the employees of every employer of five or more persons, the duty to pay contributions is imposed upon every such employer as defined in it. The payment so required is a proper tax on the exercise of the right to employ, and a numerical classification of this nature is valid. *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S. 495, 510, 57 Sup. Ct. 868. Only employers of less than five as defined in the act are exempt from the payment of this tax. Under the act as originally adopted (General Statutes, Cum. Sup. 1937, § 804d) it was possible for some employers of five or more persons by resort to such a course as that revealed by the facts in this case, to defeat the remedial objects of this legislation. At its next session in 1939, the legislature adopted as an amendment the provision in question. The amendment was

adopted in pursuance of a suggestion made by the administrator of the unemployment compensation division with the approval of the advisory council for the division, and the written statement of the purpose filed with the legislature in connection with the proposal, after referring to the fact that certain employers were taking advantage of this loophole in the 1937 law, continued: "It seems only fair that the employees of such enterprises should be covered and it seems desirable to keep enterprises from subdividing into separate corporations, partnerships, and individual proprietors . . . and thus avoiding coverage under the Unemployment Compensation Law." The content of this provision, effectively worded as the amendment is to apply to such a situation as the one before us, which the original enactment failed to cover, and to deal with it in a manner in harmony with the general design of the act, considered in connection with the avowed purpose of its enactment, leaves no doubt that the classification prescribed by it has a fair and substantial relation to the object of the legislation. That it is calculated to close an avenue of tax avoidance, of itself lends support to its validity. *Blodgett* v. *Guaranty Trust Co.*, 114 Conn. 207, 220, 158 Atl. 245. The statute does not violate the equal protection clause of the state or federal constitution.

The final claim calling for consideration is that the statute impairs the obligation of the state's contract with the plaintiff corporation and is for this reason unconstitutional. The plaintiff's contention is that it impairs this contract "for it tears the corporate veil from the plaintiff and denies to its stockholders that very protection for which it contracted with the state . . . action . . . expressly inhibited by Article I, Section 10 of the Federal Constitution. . . ." It is true that a court of equity will look through the corporate

veil in certain circumstances but none of those generally recognized is apparently present in this case. *Connecticut Co.* v. *New York, N. H. & H. R. Co.,* 94 Conn. 13, 26, 107 Atl. 646; *Hoffman Wall Paper Co., Inc.* v. *Hartford,* 114 Conn. 531, 535, 159 Atl. 346. The court determines whether or not to do so in pursuance of its judicial function to uphold the ends of public policy. *Berkey* v. *Third Avenue Ry. Co.,* 244 N. Y. 84, 95, 155 N. E. 58; *Hill* v. *Jones,* 118 Conn. 12, 18, 170 Atl. 154. But the legislature determines the public policy of the state, and there is no such restriction upon the legislative function. No justification is suggested for the claim that the legislature does not have the authority to recognize the practicalities of control notwithstanding the existence of corporate entities which may be materially affected by such recognition. See *Natural Gas Pipeline Co.* v. *Slattery,* 302 U. S. 300, 306, 58 Sup. Ct. 199; *United States* v. *Lehigh Valley R. Company,* 220 U. S. 257, 274, 31 Sup. Ct. 387; *United States* v. *Whyel,* 19 Fed. (2d) 260, 262, 278 U. S. 664, 49 Sup. Ct. 178; *Fox* v. *Standard Oil Co.,* 294 U. S. 87, 97, 55 Sup. Ct. 333. To paraphrase what we said in *Connecticut Co.* v. *New York, N. H. & H. R. Co.,* supra: It is only in the shadows cast by legal technicalities that a lack of common ownership and control can be discerned. Looking through these shadows to discover the substance of things, as courts are now wont to do, to the end that fraud may be defeated, obligations and responsibilities not evaded and the ends of justice subserved, one real ownership and control may be found present in the situation before us. "A corporation organized under general incorporation laws, whether there be or be not a statutory reservation of a power of amendment or repeal, holds its franchises necessarily subject to the right of the State to change those

general laws, and their application to existing corporations, in any manner not prejudicial to vested interests of the latter or of its creditors or stockholders, nor inconsistent with the terms of the implied contract of the latter." *Converse, Receiver* v. *Aetna National Bank,* 79 Conn. 163, 169, 64 Atl. 341. The power of the legislature to disregard the corporate fiction has been expressly upheld in cases where a provision similar to the one before us, in the unemployment compensation statutes of other states, has been sustained as constitutional. *Unemployment Compensation Commission* v. *Coal Co.,* 216 N. C. 6, 3 S. E. (2d) 290; *Unemployment Compensation Commission* v. *J. M. Willis Barber & Beauty Shop,* 219 N. C. 709, 15 S. E. (2d) 4; *Maine Unemployment Compensation Commission* v. *Androscoggin Junior, Inc.,* 137 Me. 154, 161, 16 Atl. (2d) 252. Other cases in which a provision of like nature has been upheld are: *Florida Industrial Commission* v. *Gary-Lockhart Drug Co.,* 143 Fla. 293, 196 So. 845; *Gibson Products Co.* v. *Murphy,* 186 Okla. 714, 718, 100 Pac. (2d) 453. The statute is not unconstitutional as impairing the obligation of contract.

Our answer to each of the first two questions submitted is "No." The third question is not answered.

No costs will be taxed to either party in this court.

In this opinion the other judges concurred.