NEW HAVEN MARKET EXCHANGE, INC. v. ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and QUINLAN, Js.

Argued April 8—decided May 12, 1953

*James F. Rosen,* with whom, on the brief, was *Richard Belford,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the appellee (defendant).

BALDWIN, J. The plaintiff appealed to the Superior Court seeking relief from an assessment of contributions to the unemployment compensation fund made by the defendant as administrator of the Unemployment Compensation Act. The court rendered judgment dismissing the appeal and confirming the assessment. The plaintiff has appealed from that judgment.

The facts are not in dispute. Donato and Louis Maisano own and control the Pepe-Maisano Company, Inc., a large wholesaler of food products. Prior to 1930, a number of truck farmers and produce dealers attempted, unsuccessfully, to establish a co-operative market in New Haven. They prevailed

upon the Maisanos, who owned land suitable for their purpose, to make it available to them. In 1930, the Maisanos organized the plaintiff corporation, which took title to the land and purchased additional land. A market place with stores and stalls was created. The value of the property conveyed by the Maisanos was $100,000. They took, and now hold, a first mortgage in that amount on the real property and a trust mortgage in the same amount on all the assets of the corporation.

Of the 13,100 shares of stock issued by the plaintiff, the Maisanos own 12,056 shares. The remainder is distributed among approximately 120 stockholders. The board of directors consists of Domenic A. De-Vito, general manager and secretary, Gino Santella, a newspaper publisher, and Donato and Louis Maisano, president and treasurer respectively. All checks issued by the corporation are signed by De-Vito and one of the Maisanos. The corporation has three employees—DeVito, a bookkeeper and a caretaker. DeVito consults one or the other of the Maisanos on any problem beyond the daily routine.

The Pepe-Maisano Company has been subject to the Unemployment Compensation Act since 1936. The plaintiff was advised by the administrator in 1937 that it was not liable to assessment for contributions to the unemployment compensation fund, and the contribution paid at that time was returned to it. The defendant has now assessed contributions against the plaintiff for a six-year period beginning with the third quarter of 1945 and ending with the third quarter of 1951 at a maximum rate as provided in General Statutes, § 7498 (b). During all of this time, the Pepe-Maisano Company has had a merit rating account status which entitled it to contribute at a preferential rate.

The main question presented by the appeal is whether the plaintiff and the Pepe-Maisano Company, which is admittedly subject to the act, come within the provisions of § 1325b of the 1951 Cumulative Supplement. The pertinent portion of that section reads as follows: "(4) [A]n employer who has four or more employees in his employment at the same time during any thirteen weeks in any calendar year after 1941 shall become subject to this chapter at the end of the thirteenth of such weeks. In determining whether an employer in question shall be considered, for the purposes of this section, as having had a particular number of employees in his employment at a given time, there shall be counted, in addition to his own employees, if any, (a) the employees of each employer whose business was at the given time owned or controlled, directly or indirectly, by the same interests which owned or controlled the business of the employer in question. . . ."

The primary purpose of the Unemployment Compensation Act is to relieve the distress of unemployment. It is remedial in character. We have construed it liberally as it affects beneficiaries so that it might better accomplish its purpose. *Waterbury Savings Bank* v. *Danaher,* 128 Conn. 78, 82, 20 A.2d 455; *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213, 220, 21 A.2d 383. We have recently said of the provision here under consideration that its obvious purpose "is to prevent an employer from avoiding payment of the involuntary contribution prescribed." *Feldman* v. *Administrator,* 138 Conn. 724, 727, 89 A.2d 210. In the light of the language of the provision, the critical question is whether the same interests own or control both the Pepe-Maisano Company and the plaintiff. Where

the ownership of two separate businesses is identical, there can be little question. However, when the ownership is represented by stock in two or more corporations, held by a number of different stockholders, we must look further to find whether the same interests, through stock ownership or through management, control the business of both.

The unemployment compensation acts of a number of jurisdictions contain provisions similar to those in our own statute. The courts of these states have considered these provisions in many cases. It serves no useful purpose, in the determination of this case, to discuss these authorities. See 48 Am. Jur. 531, § 26; notes, 142 A.L.R. 918, 923, 158 A.L.R. 1237, 1240; 1A CCH Unemployment Ins. Rep. ¶ 1311 (Cum. Case Notes). From an examination, it appears generally that each case must be determined upon its own peculiar circumstances. Whether the business of a particular employer is owned or controlled by the same interests that own and control the business of another employer is a question of fact. *New Haven Metal & Heating Supply Co.* v. *Danaher*, 128 Conn. 213, 217, 21 A.2d 383; see *Murphy* v. *Doniphan Telephone Co.*, 347 Mo. 372, 379, 147 S.W.2d 616; *In re Mitchell*, 220 N.C. 65, 66, 16 S.E.2d 476; *Maryland Unemployment Compensation Board* v. *Albrecht*, 183 Md. 87, 91, 36 A.2d 666. The subordinate facts found support the conclusion of the trial court.

The plaintiff claims that if it is liable under the act it is entitled to the same merit rating that the Pepe-Maisano Company enjoys. In fixing a merit rating status for any employer within the act, § 7498 of the General Statutes requires that the administrator must first compute a merit rating index for each employer who has been subject to the act during a so-called experience period, which is the three

years next before June 30 in the year in which the computation is made. See *Allen Mfg. Co.* v. *Administrator,* 139 Conn. 402, 406, 94 A.2d 608. Before this can be done, the employer must have filed the required contribution reports and paid contributions on the wages reported during this period. The plaintiff did not meet this requirement, which the statute makes a prerequisite to the establishment of a merit rating status. The statute also provides that two or more employers may mingle their merit rating accounts as if they constituted a single employer. § 7498 (d); Conn. Dept. Regs. § 374-20. But this can be done only upon the written request of the employers, made, necessarily, before the computation of the merit rating index for any particular year. No such written request was received from the plaintiff. It is of no avail to it that it paid a contribution in 1937 which was returned by the administrator. The provision which makes it liable for contributions was not incorporated in the statute until 1939. Public Acts 1939, c. 310, § 3; Cum. Sup. 1939, § 1335e. This explains the refusal of the administrator to accept contributions in 1937. The court's ruling that the plaintiff was not entitled to the same merit rating status as the Pepe-Maisano Company was correct.

There is no error.

In this opinion the other judges concurred.