### STEVE WIGFALL v. THE STATE.

#### No. 284.   Decided January 12, 1910.

#### 1.—Arson—Continuance—Want of Diligence—Conflicting Testimony.

Where, upon trial for arson, defendant, in his application for continuance, did not show diligence in procuring the absent testimony, which, as it appeared by the bill of exceptions, was conflicting and indefinite, there was no error in overruling his application.

#### 2.—Same—Charge of Court—Alibi.

Where, upon trial for arson, the court's charge on alibi was in the usual and approved form, there was no error. Following Gallaher v. State, 28 Texas Crim. App., 247.

#### 3.—Same—Wilful Burning—Charge of Court.

Where, upon trial for arson, the defendant objected, in his motion for new trial, that the court's charge failed to instruct the jury that the burning must be wilful, but the record showed that the court did so charge, there was no error.

#### 4.—Same—Charge of Court—Burning.

Where, upon trial for arson, the evidence showed that the house was on fire and blazing, but the fire was afterwards put out, there was no error in refusing a requested charge that, if the house was simply scorched and smoked, to acquit the defendant.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of arson; penalty, nine years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for arson, the punishment assessed being nine years confinement in the penitentiary.

The State makes out a case by showing that appellant rolled some matting under the edge of a house, that there was kerosene oil on the matting, and it was set on fire, and the fire communicated to the building. He was recognized as the party who set the matting and house on fire. He denied being present, and stated that he was not at the house of Ella Mayfield on the night of the fire, Ella Mayfield being the owner or occupant of the house in question. He said he had been intimate with the woman, and had paid the rent on the house most of the time she lived in it, and was engaged to be married to her. He further states that he was working at the Oriental Hotel at the time, and worked on the evening of the fire until about 7:30 or 8 o'clock; that he scrubbed the floors at the hotel. The State shows that about 8 o'clock he was at the house that was a few moments later set on fire, which was in a different part of the city from the hotel.

1. Appellant presented an application for a continuance on account of the absence of a witness named Hawkins, a negro whose address is given at H. Foster's barbershop, on Elm Street, and he says on the 21st of May he caused to be issued for this witness a subpoena, which subpoena was returned not found or located in Dallas County. He says that he has been incarcerated in jail, had no attorney, and that he expected to prove by this witness that he was at this barbershop on the night on which the alleged burning occurred, and he further alleges that another negro named Hawkins, a brother of the other witness, was sick in bed on the night during which it is alleged the offense was committed, and with whom this defendant sat up during the night and until about 6 o'clock in the morning. By the first named Hawkins he expected to prove that he, appellant, was at the barbershop where Hawkins worked on the night on which it is alleged the burning occurred, and he says that both witnesses would testify he was not present at the place it is alleged the arson was committed, but that he was with said Hawkins brothers, at the barbershop with one, and sitting up with the other one who was sick. The application for continuance is in the record but not sworn to, and these matters are set up in bill of exceptions. The court approves the bill with the explanation that only one witness was claimed to have been issued for, and the witness is not shown to reside in Dallas County, nor was the county of his residence given, and that there was no diligence exercised, and besides the explanation, calls attention to the fact that defendant on the trial swore as a witness that he was at the Oriental Hotel, not at the Hawkins residence at all. We notice that the evidence as given by appellant in his own behalf did not place him at any time with either of the Hawkins, but he does state in his testimony before the jury that he was at the Oriental Hotel until about 7:30 or 8 o'clock. As the bill presents the matter there is

nothing in it of sufficient merit to require a reversal. It will be noticed also in addition to the judge's explanation that the recitals in the bill of exceptions would place appellant at two, different points, one at the place where one of the Hawkins was sick, sitting up with him, and the other at the barbershop. We are, therefore, of opinion that the court did not err in not granting the continuance as the matter is presented.

2. Some portions of the charge are criticised, but viewed as a whole we are of opinion these criticisms are without merit. We are of opinion that the criticism of the charge on alibi is without merit. It is a stereotyped form which has been followed by the courts of this State. In the case of Gallaher v. State, 28 Texas Crim. App., 247, this particular form of charge was reviewed very elaborately, and held to be sufficient.

3. Another portion of the charge is criticised, to wit: "Where a fire is communicated to a house by means of setting fire to some combustible material which was close enough to communicate therewith," etc. Appellant objects to this charge because it instructed the jury that the burning might be sufficient, although it was not wilfully done. The court's charge is sufficiently full in regard to this matter and instructed the jury fully that the burning must be wilful. Taking the whole charge together, this question was fully presented. The court instructed the jury that "the offense of arson is the wilful burning of any house, which is defined to you as any building, edifice or structure enclosed within walls, whatever may be the material used for the building." Then applying the law to the facts, the court instructed the jury that before they could find appellant guilty, they must believe beyond a reasonable doubt that he unlawfully and wilfully set fire to and burned the house belonging to the alleged owner.

4. The court refused appellant's requested instruction in which it was sought to instruct the jury that it was not sufficient for the State to prove the house was simply scorched or smoked, as follows: "Such proof, if there is any such proof, is insufficient to sustain a conviction. You are therefore instructed that if you find that the house was simply scorched or smoked, then you will acquit the defendant. If you have a reasonable doubt in your mind as to whether or not there was any burning in addition to being scorched or smoked, if it was smoked or scorched you will resolve such doubt in favor of the defendant." We are of opinion this charge is not called for by the evidence. The alleged owner testified that on the night of the day, about 8 or 9 o'clock, she heard someone call or scream, and she rushed to the door, and found her house on fire. Someone had set fire to a lot of matting, and pushed it under the kitchen; it was all ablaze, and the house caught on fire; that someone

had poured coal oil on the matting; that her brother snatched the matting away and poured water on the fire and put it out. She said her house had been set on fire a few nights before by appellant, but when closely examined in regard to the former fire she was not so clear about it. Another witness, Roxie Mays, testified that she lived just behind Ella Mayfield, the owner of the house that was set on fire, and was at her wood house locking the doors on the night of the fire, and heard a noise, and looked and saw someone strike a match and set fire to some old matting that was under the house. "It blazed up and I saw the defendant by the light it made. I know it was him, because I saw his face in the light. He walked to the fence and stepped over into my yard, and then run out at my front gate. The house was afire and blazing. I holloed three times as soon as he struck the match, and it blazed up." She says it did not burn a hole in the house, but it was blazing, and the walls were blazing. We do not believe the evidence called for the charge requested by appellant, and there was, therefore, no error in refusing to give it.

The judgment is affirmed.

*Affirmed.*