## Hudson Waters v. The State.

### No. 1673. Decided May 1, 1912.

**1.—Assault to Murder—Indictment.**

Where the indictment, charging assault with intent to murder, followed approved precedent there was no error.

**2.—Same—Continuance—Want of Diligence—Testimony not Probably True.**

Where defendant's application set out facts by which defendant expected to prove an alibi, but his testimony with reference thereto showed that the absent testimony was not true, and besides, the defendant did not use diligence, there was no error in overruling the motion.

**3.—Same—Bill of Exception—Charge of Court.**

Where the bill of exceptions to the charge of the court was general in character and pointed out no grounds of objection, the same was insufficient.

**4.—Same—Evidence—Principals—Charge of Court—Accessory.**

Where, upon trial of assault to murder, defendant's testimony was that he was not guilty of any offense, there was no error in admitting the testimony of the State which would make defendant a principal in the commission of the offense, and there was, therefore, no error in the court's failure to submit the issues as to whether the defendant was an accessory or an accomplice, and in only presenting the law as to who are principals.

**5.—Same—Charge of Court—Self-Defense—Alibi.**

Where defendant's testimony would tend to show that he was not present and did not participate in making the assault on prosecutor, and the State's evidence showed the contrary, there was no error in the court's failure to submit the law of self-defense, but simply to submit the question of alibi.

**6.—Same—Charge of Court as a Whole.**

Where, upon trial of assault to murder, the court instructed the jury that if they believed beyond a reasonable doubt that defendant with malice aforethought unlawfully and intentionally cut the prosecutor, and further found that the act did not constitute aggravated assault and simple assault, he would be guilty of assault to murder, there was no error, the court in another portion of his charge instructing the jury that if they had a reasonable doubt of defendant's guilt to acquit him, etc. Davidson, Presiding Judge, dissenting.

**7.—Same—Charge of Court—Harmless Error.**

Where the error in the court's charge, if error, could only result beneficially to defendant, he could not complain.

**8.—Same—General Criticism—Charge of Court.**

Where the criticisms of the charge of the court are vague, indefinite and attempt to point out no error therein, the same can not be considered on appeal.

**9.—Same—Misconduct of Jury—Affidavits—Presumption.**

Where the motion for new trial alleging misconduct of the jury was not supported by affidavit, and was contested by the State and overruled by the court, the presumption is in favor of the judgment of the court; besides, the testimony heard on the motion for new trial was not filed until long after the adjournment of court.

**10.—Same—Statement of Facts—Practice on Appeal.**

Where a statement of facts is partly typewritten and partly written in pencil on both sides of the sheet, while erasures and interlineations are frequent, the same can not be considered on appeal.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*M. B. Briggs* and *J. S. Barnwell,* for appellant.—On question of the insufficiency of the evidence: Hatton v. State, 31 Texas Crim. Rep., 586; Williams v. State, 123 S. W. Rep., 1110.

On question of the court's charge: Mitchell v. State, 36 S. W. Rep., 456; Wilcek v. State, 141 S. W. Rep., 88.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of the offense of making an assault on one Will Oliver with the intent to murder the said Oliver, and his punishment assessed at two years confinement in the penitentiary.

1. There was no error in the court refusing to quash the indictment. It is drawn in terms frequently approved by this court. (Branch's Crim. Law, section 513.)

2. Appellant complains of the action of the court in overruling his motion for continuance. In approving the bill the court states: "Approved with the qualification that the subpoena was issued for the witness for which the continuance was sought on the 14th of January, 1911, which was Saturday before the criminal docket was taken up on Monday, and at which time this as well as all other cases on said docket were to be called. The sheriff returned the subpoena on Tuesday, the 17th, stating that the witness was not served for want of time. No other process was issued or asked for by defendant. The case was called for trial on January 23, 1911." It is thus seen the defendant did not use the diligence required by law. This court, in passing on the action of the trial court in overruling an application for continuance, takes into consideration the entire record in the case, and the fact that this defendant had told of the bridle of his mule, at the time the lady screamed, is proven by a number of witnesses, and it is shown that the absent witness is not the person who called him. The other facts, it is stated, expected to be proven by this witness, the

defendant in his testimony shows are not true. Therefore, the court did not err in overruling the application. The defendant and no other person places the absent witness where, he could have testified to facts that it is stated he expected to prove by him, and where the defendant states he expects to prove facts by an absent witness that would go to prove an alibi, and the defendant in his testimony on the trial testifies to such facts as would show the testimony to be not true, there is no error in overruling the application. Boyd v. State, 50 Texas Crim. Rep., 139; Wigfall v. State, 57 Texas Crim. Rep., 639.

3. Bill of exceptions No. 4 presents no error, it reading: "When the trial court read his general charge to the jury the defendant then and there in open court objected to said charge as a whole and to each paragraph contained therein," stating no grounds or reasons for said objection.

4. The only bill relating to the introduction of testimony, objects to a portion of the testimony of the witness Will Oliver. Oliver testified:

"My name is Will Oliver. I live near Graceton in Upshur County, Texas. I attended a box supper at Walnut Creek Church on the night of the 23d of December, 1910, about three or four miles from where I live. I am a member of the church there. I saw the defendant there that night in company with Arthur Blalock, Raymond Blalock and E. L. Brooks. They were sitting about middle of the house near the stove. Some of them were smoking. I went back there to get my lantern to go out and see about my team, when a lady spoke out and requested me to ask them to quit smoking. She spoke loud enough to be heard some distance around her. I then asked the boys to quit smoking as it was offensive to some of the ladies. They did not quit, but continued to smoke. This defendant was smoking.

"After the box supper was over I carried my folks out to my wagon and then went back into the house to close the doors and see about the stove. The stove pipe had fallen down during the box supper and there was fire in it. I had been in the habit of closing up the doors and looking after the house ever since I had been a member. The defendant and Arthur Blalock, Raymond and E. L. Brooks were at the stove and had built up the fire. I requested them to get out so that I could close the house and put the fire out. This seemed to offend them and they used some bad language. Then Arthur Blalock said, 'Yes, by God, we will get out.' And defendant said, 'Yes, and we'll get you too.' They then went out at the side door, all four of them together. I then fixed the fire and closed up the doors and went out taking a piece of pine with me in my hand. My wagon was in front of the house and about ten or fifteen steps from the door.

"I saw the four boys standing together near the corner of the house as I went out. They began cursing and abusing me, using bad and vulgar language. My wife and child and the teacher Miss Jennie McPhail were at the wagon. I paid but little attention to them at

first but was arranging to get in the wagon and go home, when one of the four boys, I think it was Arthur Blalock, said, 'The son of a bitch would fuck his mother.' This was said loud enough for any one to hear it. That made me mad and I stepped a few steps back from my wagon towards them where I was standing and told them if they wanted any thing to get on me, not to stand and curse me like I was a dog, and told them they were a low down set of dirty rascals. I still had my piece of pine in my hand. They did not attack me there but continued to curse and abuse me and make threats; the language was very bad and boisterous. My wife was crying and telling me to come on and go home. I had my lantern on my arm, it was lighted. I went on to my wagon and unhitched my mules from the tree and dropped my piece of pine by the wagon wheel on the ground and got in and started. One of my mules was young and foolish and I had trouble guiding him. I was also trying to watch these boys who were coming on behind me cursing and making a great deal of noise and threats. So my wagon ran into a log or fallen tree about seventy-five yards from the church and hung up. My lantern was on my arm and was still burning. I heard one of them say 'Now is the time to get the damned son-of-a-bitch,' and I heard them rushing towards my wagon. Arthur Blalock and the defendant here, Hudson Waters, came striking at me, they were near the fore wheel of the wagon on the right side, and I was sitting in a chair in the front of the wagon on the right side. I did not get up out of my chair. I was holding the mules and my lantern was on my left arm, and I was trying to ward off the blows from the defendant and Arthur Blalock. I was kicking with my right foot. The boys had accused me of calling them sons-of-bitches back at the church house and I had told them that if I had done so I would take it back, that I wanted them to let me go on home. When Hudson Waters was striking me at the wagon, he struck me with a knife in the right side in front about two inches to the right of center line and about two inches below the right nipple. As he struck me he said, 'Yes, God damn you, you will take it back,' and stabbed me and then give the knife an additional hunch. Arthur Blalock had stepped upon the front wheel, and cut me across the face. Hudson Waters reached around Arthur Blalock when he cut me in the breast. I recognized the two persons Arthur Blalock and Hudson Waters. My light shined right in their faces and I know it was the defendant who stuck the knife in my side."

Under this state of facts it was not error to admit what Arthur Blalock said on that occasion, and it was proper for the court to present the law applicable to who are principals in the commission of an offense. There is no testimony which would raise the issue that defendant might have been an accessory or an accomplice. Defendant by his testimony would show that he was guilty of no offense, and the testimony of the State would make him a principal in the commission of the offense. Therefore, the court did not err in failing to submit

the issues of whether the defendant was an accessory or an accomplice, and in only presenting the law as to who are principals.

5.   Neither was there any error in the court failing to submit the issue of whether or not the defendant or Arthur Blalock, if they cut the prosecuting witness, was acting in self-defense in so doing.   The evidence for the State all supports the testimony of Oliver herein copied.   The evidence offered in behalf of defendant does not present any theory which would justify or excuse the cutting of Oliver by himself or Blalock, if they did do so.   The defendant's testimony would tend to show that he was not present and did not participate in making the assault on Oliver.   This issue the court submitted, instructing the jury:

"If you find that this defendant was not present at the time Oliver was cut, or if you have a reasonable doubt thereof, or if you find he was present, but you find he did not know of the unlawful intent, if any, of Arthur Blalock, if you have found that he, Blalock, cut Oliver, or if you have a reasonable doubt thereof or if you find he was present and that Blalock cut Oliver and that this defendant knew of the unlawful intent, if any, of Blalock, yet if you find that he did not aid him, Blalock, by acts or encouraged him by words or gestures in such cutting, then you are instructed that you can not convict this defendant as a principal with said Blalock.

"Amongst other defenses interposed by the defendant is what in legal phraseology is termed an alibi, that is, if the alleged injured party was cut as alleged, that the defendant was at the time of such cutting at another and different place from that of which the cutting occurred and therefore was not nor could have been the person who did the cutting, and could not have been a principal by acting together with those who did cut Oliver or by aiding such persons by acts or encouraging them by words or gestures in cutting Oliver, so if the evidence raises in your mind a reasonable doubt as to the presence of the defendant at the wagon where Will Oliver was cut at the time he was cut you will acquit the defendant, although you may find he was at the church house at the time of the wordy altercation before Oliver got in his wagon and started home."

This presented the defense of defendant as made by the testimony affirmatively and fully, and the criticisms of these two paragraphs of the charge are not well taken.

6.   The court in his charge submitted assault to murder, aggravated assault and simple assault.   In presenting assault to murder he instructed the jury:

"Now if you believe from the evidence beyond a reasonable doubt that at the time and place charged in the indictment, the defendant, acting with his malice aforethought, did unlawfully and intentionally cut Will Oliver with a weapon which was then and there a deadly weapon, and if you further find he had the specific intent to kill him, then if you find beyond a reasonable doubt that the defendant is not

guilty of an aggravated assault and battery or simple assault and battery under the instructions hereinafter given you in charge, you will find the defendant guilty of an assault with intent to murder."

In the motion for new trial it is insisted that this instructed the jury to find defendant guilty of some offense, and is therefore erroneous. However, when we consider the other portions of the charge we do not think this ground should be sustained. The court instructed the jury:

"If you find beyond a reasonable doubt that the defendant under foregoing instructions is guilty of some grade of assault, but you have a reasonable doubt as to whether he is guilty of an assault with intent to murder or an aggravated assault and battery, you will convict him of no higher offense than aggravated assault and battery, or if you have a reasonable doubt as to whether he is guilty of an aggravated assault and battery or simple assault and battery, you will convict him of no higher offense than simple assault and battery.

"If you have a reasonable doubt as to his guilt you will acquit. The defendant is presumed to be innocent until his guilt is established by legal evidence and in case you have a reasonable doubt as to his guilt you must acquit."

The paragraph above criticised merely instructed the jury that if they believed beyond a reasonable doubt that defendant with malice aforethought unlawfully and intentionally cut Oliver, and further found that the acts did not constitute aggravated assault and simple assault only, he would be guilty of assault to murder. In a sense, the offenses of aggravated assault and simple assault are defenses against a charge of assault to murder, and it was proper for the court to instruct the jury that before they would be authorized to convict defendant of assault to murder they must find beyond a reasonable doubt the illegal act, if committed, was done with the specific intent to kill, and that defendant was not guilty of any other lesser degree of offense submitted in the charge. The error in the charge, if error there be, could and would only result beneficially to defendant, and he should not be permitted to complain thereof.

The other criticisms of the charge of the court are vague, indefinite and attempt to point out no error therein. The charge of the court must be read as a whole, and taken as a whole it presents the case fairly and fully as applicable to the evidence.

7. The only other ground in the motion relates to the misconduct of the jury. The motion for new trial, which attempts to present this matter, is not sworn to by defendant, or any other person. The State, in contesting the motion, presents the affidavits of ten of the jurors, which would show there was no improper conduct. On the hearing of the motion for new trial testimony was heard, and the testimony would all go to show that nothing which could or would have influenced the verdict as against this defendant took place. In addition to this the

testimony heard on the motion for new trial was not filed until long after the adjournment of court, and the question therefore can not be reviewed by us. (Probest v. State, 60 Texas Crim. Rep., 608, and cases there cited.) However, if we should do so, while there is some testimony that one of the jurymen discussed the antecedents of Arthur Blalock (which is denied by the juror) yet there was nothing said that could have influenced the jury in determining whether defendant cut Oliver or aided and abetted Blalock in the commission of the offense. No injury is shown by the testimony in this case. In fact, it is questionable whether or not anything was said in regard to the antecedents of Blalock while the jury was considering the case. The trial court heard the evidence and overruled the motion, and we would be authorized to find that he must have found that such matters were discussed after the verdict had been agreed on and the jury discharged and not while they were considering the case. A number of the jurymen so testify. (Smith v. State, 106 S. W. Rep., 1161; Arnwine v. State, 114 S. W. Rep., 796.) However, as hereinbefore stated, this matter is presented in a way we can not consider it. The defendant does not swear to his motion presenting the new matter. No affidavit of the truth of the matter set up is attached thereto, while the State in its contest attaches the affidavit of nearly all the jurors that such matters did not take place. Hereafter unless the motion for new trial setting up new matter is supported by affidavit, we will not pass on such grounds on appeal.

And there is another matter we wish to call attention to. In this case the State has filed the following motion:

"The endorsement of the clerk on the back of the transcript shows that he prepared and delivered the same to attorneys for appellant on the 12th day of April, 1911. The transcript was forwarded to and filed by the clerk on December 15, 1911, just about eleven months from the day of trial and some eight months after the transcript was delivered to counsel for appellant. By reading this transcript the court will see that it has been so recklessly compiled and prepared that it is almost unintelligible, and I submit that the acts of the clerk in imposing on this court such a transcript which shows upon its face that it was not compared with the original papers after being prepared, amounts almost to contempt of this court, and for the protection of this court it should call the attention of the clerk to this dereliction in duty. Again I call attention of the court to the supposed statement of facts filed in this case with the record. It is so prepared that this court can not pass upon the questions sought to be presented with credit to itself. I submit that the rules provided for this and other Appellate Courts in this State, provide that the statement of facts shall be so prepared that they may be easily read by the judge of the Appellate Court, that they shall be written upon one side of the paper only. In this case there are interlineations, erasures, mutilations and writings on both sides of the sheets of paper, part of it typewritten,

part in pencil and part in ink, and is presented in such manner as to tax the patience of any court, and this court owes it to itself to refuse to consider any statement prepared as this one was. I further submit that the district judge should not have approved this statement of facts in the shape it is in. This court is already overburdened with work, even if the records were in proper shape, but when placed in the shape of this record, it will give double or triple the work that they would have if the record was in proper shape, and, therefore, I insist that the court should refuse to consider this statement of facts."

In this case we have gone through the record, although it is as the Assistant Attorney-General states: part of the statement of facts is typewritten, part written in pencil, on both sides of the sheet, while erasures and interlineations are frequent, and we want to hear and now state that records in this condition will not hereafter be considered. The law authorizes the Supreme Court to make rules governing all courts, and by reference to those rules it will be seen that a record sent to an Appellate Court in the condition we find this one, should not be considered. In future attorneys for a defendant and for the State are informed that the party responsible for such a record being sent us, will suffer by reason thereof. This is said that no one can hereafter say, that it was improper to make an example of him. Get up the records under the rules adopted for the government of this and other courts and they will receive careful and painstaking consideration. If you do not do so, blame no one but yourself if they are not considered.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied May 1, 1912.—Reporter.]

DAVIDSON, PRESIDING JUDGE (dissenting).—I did not enter a dissenting opinion upon the original disposition of this case. I have gone over the motion for rehearing in the light of the record and opinion of my brethren and believe the judgment should be reversed and the cause remanded. Several matters I do not care to discuss. Two phases of the charge, however, I think, are so detrimentally erroneous the motion for rehearing ought to be granted and the judgment reversed.

The court charged the jury in the following language: "If you find beyond a reasonable doubt that the defendant is not guilty of aggravated assault and battery, or simple assault and battery, under the instructions hereinafter given you, you will find the defendant guilty of assault with intent to murder." This is practically an instruction to convict the defendant of one of the offenses named. He plead not guilty, and under his view of the case was not guilty. This charge shows error on the face of the language employed. I do not care to discuss it.

Again, the court gave the following charge: "If you find that he,

defendant, did not have the specific intent to kill Oliver or if you have a reasonable doubt as to whether he had such intent, you will convict the defendant of aggravated assault and battery." This charge also instructed the jury to convict either of assault with intent to murder or aggravated assault. This charge not only instructed the jury to convict either of assault to murder or aggravated assault, but virtually instructed the jury not to consider the question of simple assault, and eliminated all hope of acquittal under his view of the case if the jury should agree with him. I do not care to discuss the matter, but simply enter this brief dissent.