LEE ARNWINE v. THE STATE.

No. 3766. Decided June 13, 1908.

</div>

**1.—Murder — Evidence — Confronting Witnesses — Stenographer's Notes — Presumption.**

Where upon trial for murder it was shown that one of the principal State's witnesses who had testified on a previous trial, had since died; there was no error in permitting the State to reproduce the testimony of the said dead witness, by having the official stenographer to read to the jury the questions and answers taken by him at the former trial; the stenographer first testi-

fying that he had taken down said testimony, and that by referring to his notes he could tell what the testimony of the witness was on said former trial; and it will be presumed, there being nothing to the contrary, that said witness was sworn. This practice did not violate either the letter or spirit of the Constitution 'with reference to confronting witnesses. Following Pratt v. State, 53 Texas Crim. Rep., 281. Davidson, Presiding Judge, dissenting.

### 2.—Same—Charge of Court—Self-Defense.

Where upon trial for murder the evidence showed on the part of the State that the defendant began the difficulty without any provocation, there was no error in the court's charge that if defendant was the aggressor, he could not claim justification under the law of self-defense; especially when taken in connection with the rest of the court's charge on self-defense and manslaughter.

### 3.—Same—Charge of Court—Previous Provocation—Manslaughter.

Where upon trial for murder there was evidence of a previous difficulty between the defendant and deceased, the defendant could not complain of the charge of the court that the jury, on the question of manslaughter could consider the ill-will existing between the parties which arose from a previous difficulty between them. Such a charge was favorable to the defendant.

### 4.—Same—Charge of Court—Provocation—Ill-will.

Upon trial for murder where the court charged that if defendant raised the difficulty and shot deceased because or on account of previous ill-will, or merely because he was afraid the deceased would sometime attack or harm him, the killing would be murder; and the evidence pertinently suggested the issue, there was no error.

### 5.—Same—Evidence—Harmless Error.

Upon trial for murder where the evidence showed that the deceased had no pistol at the time of the homicide, and that if he had any weapon it was a target rifle, testimony on part of the State with reference to declarations by the deceased as to what he wanted to do with a certain pistol some time before the homicide, while inadmissible could not injure the defendant and was harmless error.

### 6.—Same—Evidence—Opinion of Witness.

Upon trial for murder there was no error in permitting a State witness to testify that at the time of the homicide the deceased was not doing anything to harm or hurt the defendant.

### 7.—Same—Misconduct of Jury—Former Trial.

Where upon trial for murder the testimony did not show that the jury were improperly influenced by a discussion of the former verdict upon evidence dehors the record, but that the allusion to a former trial consisted of a statement of the fact of a former trial in the jury room and was not new information, and stated no testimony which the jury did not already know, the same was not reversible error. Following Smith v. State, 52 Texas Crim. Rep., 354. Davidson, Presiding Judge, dissenting.

### 8.—Same—Sufficiency of Evidence.

Where upon trial for murder the evidence supported the verdict of murder in the second degree, the same will not be disturbed.

Appeal from the District Court of Cherokee. Tried below before the Honorable James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The facts in this case will be found in the opinion of the court upon former appeal and reported in 50 Texas Crim. Rep., 254.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—This is the third appeal of this case. The former appeals will be found in the 90 S. W. Rep., 39, and the companion case in the same volume, p. 40; also in the 50 Texas Crim. Rep., 254 and 477; 96 S. W. Rep., 4, and 99 S. W. Rep., 97. For a statement of the facts see above cited cases, which is in substance the same in this record, as in the former trial. Upon the former trial of this case Mrs. Jane Salters was a witness for the State. Her testimony was material, she having testified that standing on her gallery she witnessed a part of the shooting, and that while the shooting was going on she saw Clyde Lattimore; that he was hallooing and appeared to be on his knees with his hands up and that he was not doing anything or attempting to do anything to the defendant at that time; her testimony tended to show that the defendant was the aggressor and that the Lattimore boys were doing nothing at the time they were shot. At the time of this trial said witness was dead. Over appellant's objection the State was permitted to reproduce her testimony given orally at the former trial. The testimony was reproduced by having the official stenographer to read to the jury the questions and answers taken by him at the former trial. The predicate for the introduction of the stenographer's notes consisted solely of his testimony that he took down the testimony of the witnesses at the former trial, questions and answers and that he had his original notes and said, "I can by referring to my notes tell what the testimony of the witness was on that trial." The testimony was never read over to her nor did she sign it. On this evidence the stenographer was permitted to read his original notes to the jury. Objection was made to the reproduction of the testimony on the ground that same was hearsay and secondary evidence and in violation of the constitution and statute which require that the defendant be confronted with the witness against him. Objection was also made to the manner of reproducing the testimony on the ground that the stenographer's notes were not competent evidence of the witness' testimony and were hearsay, and if the testimony could be reproduced at all it must be done by the testimony of some persons who heard her testimony and who was able to state what that testimony was. Appellant further objected on the ground that the evidence does not show that Mrs. Jane Salters was sworn on the former trial of this case. The stenographer states, however, that she was on the witness stand and testified. We will presume that she was sworn. The record does not show anything to the contrary. So far as reproducing testimony by the stenographer is concerned, we held in Stringfel-

low v. State, 61 S. W. Rep., 719, that where the stenographer who took the testimony on a former trial was sworn for the purpose of impeaching witnesses, but could not recollect what their testimony on the former trial was, but was willing to swear that he took the testimony correctly, and that his notes showed exactly what the witnesses testified, it was error to exclude the stenographic notes in contradiction of the witnesses. In Morawitz v. State, 49 Texas Crim. Rep., 366; 91 S. W. Rep., 227, we held it was proper to permit a stenographer, who qualified as to the accuracy of his notes, to read from them competent and material testimony given by defendant on a former trial. In the case of Pratt v. State, 53 Texas Crim. Rep., 281; 109 S. W. Rep., 139, this court held that at a second or subsequent trial of a criminal case it is competent for the prosecution to put in evidence the testimony given at a previous trial by a witness who has since died; and such testimony may be proved by a person who heard it given, and who can qualify himself to state the substance of it. Such evidence is not in contravention of the constitutional right of the accused to be confronted with the witnesses for the state, citing among other cases the case of Porch v. State, 51 Texas Crim. Rep., 7; 18 Texas Ct. Rep., 761. For a discussion of the matter see first cited authorities. We accordingly hold that there was no error in permitting the stenographer to reproduce the testimony of Mrs. Salters, nor did it violate the letter or spirit of the Constitution to prove her former testimony, in the trial of the case, in this manner.

Appellant objects to the following charge of the court:

"Now, if before the defendant made any hostile demonstration with a pistol toward Lester Lattimore, the deceased, such as reasonably indicated an intention by defendant to shoot said deceased, and shortly thereafter seized, or attempted to seize, or reach for or present a target-rifle gun, in such manner and under such circumstances as reasonably induced in defendant the apprehension and belief that it was the purpose and intent of said Lester Lattimore to shoot him, defendant then had the right in his lawful self-defense to shoot and kill said Lester Lattimore, and under these circumstances the defendant would have the right to continue to shoot until, as it reasonably appeared to him, he was freed from the danger thus threatened.

"If, however, defendant was the aggressor and commenced shooting at Lester Lattimore while and before either said Lester or Clyde Lattimore had done or attempted any hostile act or demonstration towards him, defendant could claim no justification under the law of self-defense." Appellant insists that said charge was on the weight of the evidence, an expression of an opinion by the court that appellant began or may have begun the attack. We do not think said charge is subject to this criticism. The dying declarations of the deceased, Clyde Lattimore, show that

appellant began the difficulty without any provocation whatever, and the court merely applies the law applicable to his testimony. In addition to the above the court proceeds and says: "If, under the foregoing instructions you believe from the evidence that defendant killed deceased, Lester Lattimore, but you also believe such killing was committed in self-defense, or if from the evidence you have a reasonable doubt whether or not the same was done in self-defense, you will find the defendant not guilty." Preceding this charge is a long, accurate presentation of the law of self-defense, and in the light of said preceding charge, we do not think that there was any error in the charge of the court. Further applying the law of self-defense, the court gives the following charge: "If you believe Lester Lattimore jerked defendant off his horse before defendant had intentionally made any hostile demonstration towards him, such act by Lester was 'adequate cause' such as has been hereinbefore explained to you as an element of manslaughter; and if you believe he did so, and further believe that such act of Lester created sudden passion in defendant such as rendered his mind incapable of cool reflection and that he shot and killed Lester while under the immediate influence of such passion, then, in such case the killing as to Lester could not be more than manslaughter notwithstanding you may not believe Lester made any demonstration with or towards the gun." In the light of these excerpts from the charge and in the light of the whole charge, we believe it is an accurate presentation of the law and covers all the suggestions in the former opinions of this court touching this case.

Appellant complains of the following charge: "If you believe that before the occasion of the alleged killing Lester and defendant had a difficulty and that ill-feeling arose between them and continued up to the alleged homicide and that since such previous difficulty Lester Lattimore by words or acts, or by both words and acts, manifested ill-will toward defendant and an intention to do him harm, you are instructed that in passing upon the issue of self-defense as to the alleged killing of either or both Clyde and Lester you may consider these last mentioned circumstances in connection with all the other circumstances and facts in the case in judging of the reasonableness or otherwise of defendant's apprehension of danger. And if you do not believe the killing of either or both Lester and Clyde was in self-defense you may nevertheless consider all of said circumstances in passing upon the question whether adequate cause as an element of manslaughter existed or not and the degree of passion, if any, under which defendant labored at the time." Appellant objects to this charge because it is a charge upon the weight of the evidence and singled out a particular fact or portion of the evidence and gave the same undue prominence and was an expression of opinion upon the part of the court that the difficulty began and had its origin in

the ill-will between defendants and deceased; and that the charge was erroneous and fatally defective wherein it authorized the jury to consider the ill-will which the defendant bore to the deceased, in passing upon his right to defend himself against the attack made upon him, whereas any such previous ill-will was altogether immaterial in case the defendant was attacked as he claims and his right of self-defense could in no manner be affected by any such ill-will in case he was attacked as claimed. We do not think this criticism is correct. The court did not have to single out, as appellant suggests, the previous ill-will and bickerings between appellant and deceased, Lester Lattimore. Certainly to tell the jury that they could consider the ill-will existing between appellant and deceased, Lester Lattimore, as one of the predicates for determining that he was guilty of manslaughter, was a charge favorable to appellant. The criticism made in the former opinion has been eliminated in the present charge. See Arnwine v. State, 50 Texas Crim. Rep., 254; 96 S. W. Rep., 7.

Appellant objects to the following charge: "If defendant raised the difficulty and shot deceased because or on account of previous ill-will or merely because he was afraid Lester would some time attack or harm him, then in such case the killing would not be reduced below murder, no matter how much excited, angry or alarmed defendant may have been at the time of the killing." This charge was pertinently suggested by the evidence and we find no error in same. The criticism upon this charge in the former opinion has been eliminated.

Appellant complains by bill of exceptions No. 2 that the State permitted Jack Salters to testify that about a month or six weeks before the difficulty, the witness traded a pistol to the deceased Lester Lattimore, and after proving said fact the State asked the witness the following question: "What did Lester say when he got the pistol from you, as to what he wanted with it?" Appellant objected on the ground that said question was leading and was immaterial and prejudicial to defendant and that the answer thereto would be hearsay, and irrelevant and immaterial and prejudicial to defendant. The bill also shows that at the time, witness testified, the exchange took place deceased was a night watchman at the compress in Jacksonville. In answer to the question the witness answered: "Deceased told me that he wanted the pistol in order to have it in his night watching at the compress." This testimony was not admissible, but clearly it could not have injured appellant in this case, because there is no evidence that deceased attempted to shoot appellant with the pistol, or that deceased had a pistol on the day of the difficulty, but the evidence on the part of the defense is that he attempted to shoot appellant with a target rifle. It would not have been amiss for the defense to prove that he swapped

for or borrowed the pistol a short while before the difficulty. However, the evidence could not have helped the State, but might have been beneficial to the appellant, but it was inadmissible to tell what deceased said he wanted with the pistol. In the light of this record we do not believe there was any reversible error in the matter complained of.

Appellant further objects to the court permitting the stenographer to testify that on the former trial of this case, Mrs. Jane Salters stated the following: "Q. Was Clyde Lattimore doing anything at the time you saw him, that is, was he trying to hurt or harm anybody when Lee shot Lester?" Appellant objected on the ground that it called for an opinion of the witness, and was misleading. The objection was overruled and the witness answered: "Not a thing that I saw." We do not think the answer was an opinion. If the deceased, Clyde Lattimore, was standing still and doing nothing, which the answer indicates, certainly the witness Mrs. Salters could testify to it.

In the motion for rehearing in this case appellant complains of the misconduct of the jury and the evidence relating to this matter is embodied in bill of exceptions No. 1. The juror F. T. Hough swore that after the jury had retired to consider of their verdict, the juror McCaskill asked the direct question: "What was the sentence given in the former trial?" and the juror Vining spoke up and said he had sixty years in the case which we were discussing, and before he had time to say what he got in the other case, Mr. Wilder said, "He got ten years in the Lester Lattimore case." That then the juror Hough, witness, replied, "Gentlemen, you are going positively against the law, we must not consider this at all;" that after this the discussion kept up; that it was mentioned possibly a half-dozen times; that his best recollection was that Mr. Polk spoke up and said, "no, he only got fifty years in the Clyde Lattimore case and ten in the other," that at this time four of the jurors were in favor of manslaughter and one in favor of acquittal and that the rest were in favor of murder in the second degree; that McCaskill, Bowman, Edge, and Polk were in favor of manslaughter and he, Hough, was in favor of acquittal. This juror further testified that he knew at the time he was taken on the jury that defendant had been convicted before for killing the two Lattimore boys. The bill of exceptions shows that all the jurors knew this fact with one exception and he did not take any newspaper. The record shows that the appellant had been tried before in this same county for killing the two Lattimore boys and two separate verdicts rendered against him. A majority of the jurors were for murder in the second degree,—some with very high penalties, some for manslaughter and one for acquittal. They finally agreed on a compromise verdict of ten years for murder in the second degree. This is in substance

what the bill shows. All the jurors swore the discussion had no effect upon them, since they knew of the former verdict. After hearing the above testimony the court overruled the motion, on the 29th of June, 1907, and on the 13th day of July, the court still being in session, the State moved the court to set aside the said order overruling said amended motion for new trial or to permit the filing in said cause of the affidavit of the juror McCaskill in addition to the testimony given above, all the jurors having testified except the juror McCaskill, who was sick at the time the above investigation was made. This juror swears in substance to the following: That he knew before he was empaneled in this case, as a juror that defendant had been tried on the same charge in Cherokee County, and his punishment assessed at a long term of years, fifty or sixty years; that the higher court reversed the case; that he knew of this before he was empaneled on the jury; after hearing the evidence, argument of counsel and the charge of the court he was never at any time in favor of giving defendant a lower sentence than five years, and agreed willingly to a verdict giving him ten years in this case; that his recollection was that after they had agreed on a verdict of murder in the second degree and fixed the punishment of defendant at confinement for ten years in the penitentiary for the killing of Lester Lattimore, and while the foreman of the jury, Mr. A. M. Vining, was sitting at the table after the verdict was agreed to and written, he, McCaskill, asked the question how many years the defendant was given in the former trial, and some one replied that he was given fifty years; that he then said that "defendant ought to be satisfied with our verdict," as it was much lower; that he had not heard anything said on the subject of his former sentence before this time, and this was after they had agreed on and written the verdict in the last case; that he does not remember that the subject of his former sentence was mentioned at all in the trial of the first case wherein defendant was charged with the killing of Clyde Lattimore; that this conversation occurred on Wednesday evening, June 26, 1907, just before the jury returned their last verdict in the Lester Lattimore case; that he, McCaskill, was confined to his bed and was too sick to attend court when the motion by defendant for new trial was heard by the court. Appellant controverts this affidavit by the testimony of four of the jurors who swear in substance the following: While the jury was deliberating upon their verdict and before they had agreed thereon and at the time when five of said jurors stood for an acquittal and two other of said jurors favored finding the defendant guilty of manslaughter in said case, one of the said jurors who favored finding the defendant guilty of manslaughter, named McCaskill, asked the other jurors what penalty had been assessed against said defendant in the former trial of said cause; whereupon, a juror who favored finding

the defendant guilty of murder in the second degree, and assessing his penalty at a longer period than ten years, stated that in the former trial of this case the jury had assessed against the defendant a penalty of ten years imprisonment in the penitentiary; while they were still deliberating upon their verdict in this case, the said juror, Vining, stated in the presence of and to the other members of said jury, substantially, that if this said jury failed to impose upon said defendant as long a term of imprisonment as was assessed against him by the other jury in the former trial of said cause, they would be criticised by the public. The court had all the evidence before it. It seems that this jury which tried appellant in this case, also rendered a verdict in the other case. If this was done, doubtless it was done by agreement of appellant. This being true, then the jury knew all about the verdict in the former case. Furthermore, if the jurors on their voir dire, before the jury was organized, had been asked if they knew of the former verdict, this would not have disqualified them for sitting on the trial of this case. A mere statement of the fact already known to them of appellant's former conviction is not such discussion of the former conviction as could in the nature of things have prejudiced him. The statement of such fact in the jury room was not new information and stated no testimony which the jury did not already know. The authorities heretofore, on the discussion of jurors in former verdicts, have not been uniform, but under the late authority of Smith v. State, 52 Texas Crim. Rep., 344; 106 S. W., 1165, we held that unless the testimony or the evidence shows that the jury were improperly influenced by a discussion of the former verdict and the evidence dehors the record, we will not reverse the case for said discussion. We do not believe the discussion in this case influenced the action of the jury whatever, and under the above cited authority, we hold that appellant's complaint is not well founded and that there was no error of the court in overruling the motion for rehearing on this ground.

The evidence in the case supports the verdict, and finding no error in the record, the judgment is in all things affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE.—1. I think the rule is carried too far in regard to the misconduct of the jury in discussing former trial and conviction, and is extended far beyond that laid down in the Smith case. This misconduct should have reversed the judgment in the case.

2. I do not agree that the reproduction of Mrs. Salters' testimony was proper and legal. For reasons for dissenting on the proposition involved in this question, see Pratt v. State, decided at Dallas term, 1908.

[Motion for rehearing denied, December 9, 1908.—Reporter.]

DAVIDSON, Presiding Judge (dissenting).—In my judgment the motion for a new trial should have been granted in the court below in regard to discussion by the jury of conviction in the former trial, and the effect it had upon them. The statement of facts in regard to what transpired in the jury room during the deliberations of that body is not so clear as might be, but it is shown in part of the evidence that while deliberating and before arriving at a verdict the jury stood four for manslaughter, one for acquittal, the remainder being for murder in the second degree. One of the jurors was absent, and subsequently the case was reopened on motion of the State to permit his affidavit to be filed. Four of the jurors in answer to this affidavit, testified that during their deliberations the jury stood five for acquittal and two for manslaughter. There are two facts that can not be questioned on this testimony, first, before a discussion of the former verdict was had some of the jury were for acquittal, some for manslaughter; that after the discussion of said former verdict all of those who were for manslaughter and acquittal changed and agreed to a conviction for murder in the second degree. The consideration and discussion of the verdict on the former trial was and is in direct contravention of the statute. All facts and acts occurring in the jury room were wholly unknown to appellant until after the verdict. Article 817 of the Code of Criminal Procedure, provides, "New trials, in cases of felony, shall be granted for the following causes: (Subdivision 7) Where the jury, after having retired to deliberate upon a case, have received other testimony; or where a juror has conversed with any person in regard to the case,' etc. (Subdivision 8) 'Where from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial, and it shall be competent to prove such misconduct by the voluntary affidavit of a juror; and a verdict may, in like manner, in such cases be sustained by such affidavit." Article 823 of the Code of Criminal Procedure reads as follows: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." Of course, it occurs where a new trial has been granted, the case will stand for trial de novo on the merits as though it had never been tried before. White's Annotated Code of Criminal Procedure, sec. 1160. It has been held in a great number of cases to be reversible error for counsel in argument upon second trial to allude to defendant's conviction on the former trial. Hatch v. State, 8 Texas Crim. App., 416; House v. State, 4 Texas Crim. App., 567; Moore v. State, 21 Texas Crim. App., 666; Fuller v. State, 30 Texas Crim. App., 560; Richardson v. State, 33 Texas Crim. Rep., 518. And it has further been held that evidence with regard to the fact of defendant's previous conviction is inad-

missible testimony and reversible error to so admit it. Richardson
v. State, 33 Texas Crim. Rep., 518; Hargrove v. State, 33 Texas
Crim. Rep., 431. If a case has been appealed, and a new trial
ordered by the appellate court, the case stands in the same condi-
tion as if a new trial had been granted in the trial court. Cox
v. State, 7 Texas Crim. Rep., 495; Thompson v. State, 9 Texas
Crim. App., 650. It has also been held that the misconduct of a
jury if it effects fairness of a trial vitiates a verdict, and this may
be shown by the voluntary affidavit of a juror or by testimony from
the jurors under oath. See White's Annotated Code of Criminal
Procedure, sec. 1151 for authorities. It is mandatory where a jury
has received evidence after their retirement which is material, and of
a character to prejudice the defendant and influence a verdict against
him, that the appellate court reverse the judgment. See Mitchell v.
State, 36 Texas Crim. Rep., 280; Tate v. State, 38 Texas Crim.
Rep., 261. It has been held reversible error for the jury after retiring
to listen to statements of one of their number as to the credibility
of a material witness, and to discuss the failure of defendant to
testify. It has also been held in several cases that it is receiving
other testimony for the jury while deliberating on their verdict to
go out and view the locus in quo in order to discover misstatements
made by one of the witnesses. Darter v. State, 39 Texas Crim. Rep.,
40. For other authorities, see White's Annotated Code of Criminal
Procedure, Sec. 1150. See, also, Helvenston v. State, 53 Texas Crim.
Rep., 636, decided at the present term. Smith v. State, 52 Texas
Crim. Rep., 344, decided at the recent Dallas term, has extended the
rule as far as perhaps it has been in this State. In that case the
jurors changed from a harsh to a milder verdict, and it was held
that defendant was not thereby injured. In this case the jurors
changed from being in favor of manslaughter and acquittal to murder
in the second degree only after they had discussed the prior conviction
of appellant. Even in cases where counsel in argument allude to
the former trial the judgment was reversed, and it was held in
those cases that the former conviction shall be regarded as no pre-
sumption of guilt, nor shall it be alluded to in the argument. It
has also been held reversible error for counsel in argument to state
his personal knowledge of facts not in evidence or even of facts in
evidence. See White's Annotated Code of Criminal Procedure, sec.
770, subdivisions 7 and 8 for collation of authorities. Certainly,
if a statement by an attorney to a jury in the presence of the de-
fendant where he and his counsel have the opportunity to meet
such statement is reversible error, it occurs to me it would be more
harmful for a jury in their retirement to discuss facts not in evi-
dence, for there the accused has no opportunity to meet the state-
ments, and if those statements are of a material character, they
would necessarily be harmful, and under such circumstances it would

seem the statute is mandatory and the judgment should be reversed. The facts show, however, that the jurors, with one or two exceptions, were personally aware of the fact that appellant had been previously convicted. My brethren lay some stress upon this fact. If this is to be the rule, the jurors taken might be cognizant of all the facts in the case and it would result that it was not necessary to introduce evidence before them at all, but simply let them retire on what they knew and make up their verdict. I do not so understand the law. As I understand, the correct rule is the converse, that is, the accused must be tried by the jury upon evidence introduced, and not what they might personally know. The defendant is entitled to be confronted with the witnesses and have them detail their testimony in open court so that he may have the opportunity of cross-examination. If jurors act upon their personal knowledge of facts not brought out upon the trial, in the absence of the defendant, without an opportunity to cross-examine, and he be condemned unheard on these hidden facts, then it occurs to me there would be no necessity for a public trial, or that the accused be confronted with the witnesses against him, and that he would be debarred the right of cross-examination, and the further right of having the court charge the jury upon the facts upon which he is being tried. The fact that the jury acts and convicts upon testimony not brought out on the trial is one of the very strongest reasons why a new trial should be awarded. Perhaps no stronger reason could be given why a conviction should be set aside.

As I understand the statutory provision quoted, this judgment should be reversed and the cause remanded, and so believing I respectfully tender my dissent.