GIBSON PRODUCTS Co., INC., et al. v. MURPHY, State Labor Com'r, et al.

*100 P. 2d 453.*

No. 29366.   Feb. 27, 1940.

Rehearing Denied March 26, 1940.

Leslie L. Conner, of Oklahoma City, for plaintiffs in error.

Kathryn Van Leuven and Lynne B. Sells, both of Oklahoma City, for defendants in error.

RILEY, J. Plaintiffs in error have appealed from adverse judgments in two

actions instituted to recover payments made as required by the Oklahoma Unemployment Compensation Act. Chapter 52, S. L. 1936-37, p. 30, Title 40, ch. 6, Okla. Stats. Anno.

Plaintiffs are separate corporations controlled by the same officers and directors. As provided in the act, plaintiffs were found to be an employing unit. (Subdivision (f) 4, sec. 19.) Contributions or payment of taxes as ordered were made under protest. The facts are not disputed. The controversy is limited to the constitutionality of the act.

It is first contended that title to the act is defective and not in compliance with the requirements of section 57, art. 5, Constitution, in that matters dealt with in the body of the act are not mentioned in the title.

Among other things the act provides for contributions by employers of more than eight persons employed within the year for 20 weeks or longer. Section 19 (f). Then the text of the act provides for the grouping of employers who employ less than eight persons where the employing units are "owned or controlled * * * directly by the same interest." Thus, in the case at bar, as contemplated by the acts, the contributions for unemployment were enforced, in the same manner as if each of the corporations concerned has employed the minimum number of employees under par. (1) (f), section 19.

The title to the act, stripped of redundant matter, provides for and relates to unemployment compensation, stabilization of employment, and contributions by employers. By title words it is indicated that every employer is to be made subject to the provisions of the act. Therefore, it seems that the fact that there is provided in the body of the act a requirement of a minimum of eight employees in a single employment or the grouping of employing units owned or controlled by the same interests so as to constitute a minimum of eight employees, as a condition of ap-

plicability of the act, would not violate the cited constitutional provision as to title, unless it is essential that a title should be so worded as to be a complete index to all the details of the act. This is not required. Perry v. Carter, 173 Okla. 267, 48 P. 2d 278.

"No elaborate statement of the subject of an act is necessary. * * * In re Peterson's Estate (Wash.) 45 P. 2d 45."

The constitutional mandate is not enforced in such a technical manner as to cripple legislation. In re County Com'rs, etc., 22 Okla. 435, 98 P. 557.

It is sufficient if the limitation contained in the body of the act "is germane to the entire subject matter of the act." Cooper v. King, 171 Okla. 121, 42 P. 2d 249.

Such was the holding of our court in State ex rel. Read v. Midwest Mut. Burial Ass'n, Inc., 176 Okla. 468, 56 P. 2d 124.

The purpose of the constitutional provision, supra, regarding title is to put both the individual legislator and the people on notice as to legislation. Associated Industries, etc., v. Industrial Welfare Comm., 185 Okla. 177, 90 P. 2d 899. That purpose was subserved by the title now considered.

The Supreme Court of Tennessee recently so held in a very similar issue where it was contended a statute providing unemployment compensation was broader than its title. Southern Photo & Blue Print Co. v. Gore, 173 Tenn. 69, 114 S. W. 796.

Therein it was said:

"The generality of the title is no objection to it. So long as the subject matter of the body of the act is germane to that expressed in the title, it is free from the objection that the body of the act is broader than its caption."

While the provision for grouping of employing units under single ownership or control for ascertainment of whether the minimum of eight are employed so as to determine applicability of the act is not mentioned in title, this pro-

vision is but a limitation on the exemption provided by subpar. 1, of section 19 (f), and it could be logically said, if we were to sustain the contention made, that the exemption provision as a whole is severable, and being severable it could be eliminated from the act allowing the remainder to exist. So that under the title words, "providing for * * * contributions by employers, * * *" every employer such as plaintiffs in error, without regard for the number employed, would be subject to the act. Such a result is not at all necessary, for the contention is not sound.

There is nothing to the contrary contained in Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okla. 177, 90 P. 899, for there the title words specifically referred to minimum wages for "women," wherefore it was misleading when the body of the act sought to include a minimum wage for men.

There is no merit in this contention.

It is next contended that, since the continued operation of the act is made dependent upon a future contingency, that is, a decision of the Supreme Court of the United States, the act is void as a delegation of legislative power.

Section 22 of the act, supra, provides:

"In event that Title IX of the Social Security Act is declared invalid, this law shall cease to be operative, and all moneys then credited to the State of Oklahoma in the trust fund of the National Treasurer shall be returned to the taxpayers of the state through the State Treasurer."

It is likewise provided in the title of the act.

It is urged, under article 4 and section 1 of art. 5, Constitution, providing for tripartite divisions of governmental powers, and the vesting of legislative authority, respectively, that the Legislature may not provide for termination of legislation or the inoperation of an act save and except by repeal. It is urged that the provision for conditional inoperation of the act is a delegation of legislative power and authority.

We now set forth substance of a statement of the history in this social legislation as contained in the brief of defendant in error:

"The Social Security Act was enacted in August, 1935, Title IX of that Act opened the door to unemployment insurance. Before that date only one state, Wisconsin, had an active unemployment insurance law. All of the other states of the Union hesitated to enact such laws for fear that the taxes which they would have to impose on industry within their own state would redound to their serious detriment. They feared that industry in other states would have a strong competitive advantage over local industry. Title IX of the Social Security Act removed this competitive consideration. It imposed a tax on employers throughout the Nation, and it provided that, if a state should pass an unemployment compensation law, a credit up to ninety per cent. of the federal tax would be allowed to employers of that state for contributions made to a state unemployment compensation fund. The efficacy of this device to remove the fears of competition is amply borne out by the fact that in the short space of two years there had been enacted an unemployment compensation law in every state of the Union, the District of Columbia and Hawaii.

"Oklahoma enacted its unemployment compensation law in December, 1936. It had to enact the law in 1936 in order to claim a credit for the tax imposed for that year. Had it enacted the law thereafter, its employers would have paid a tax to the Federal Government, but would not have been in a position to claim the credit measured by state contributions. Thus, employers in this state would have paid the same total amount of taxes as employers in other states, with the difference, only, that instead of paying ninety per cent. of that amount to the state and ten per cent. to the Federal Government, they would have paid one hundred per cent. of the tax to the Federal Government.

"At the time of the enactment of the Oklahoma law, however, a serious question was raised as to the constitu-

tionality of the Social Security Act. Much litigation was then pending in federal and state courts attacking the statute. The Oklahoma Legislature, intent on protecting the employers of the state, adopted the obvious procedure. It enacted the law, made it immediately operative and at the same time the Legislature prepared for any future contingency that might imperil the contributions required under the act from the employers of the state. Since then, of course, the constitutionality of the Social Security Act has been settled by the Supreme Court of the United States in the case of Steward Machine Co. v. Davis, 301 U. S. 548."

The Legislature may not delegate its power to make laws, it must declare the policy and fix legal principles, but other agencies may be invested with power to ascertain facts to which the policy and principles apply, otherwise "there would be infinite confusion in the laws, * * *" 1 Cooley, Constitutional Limitations, 228 (8th Ed.)

There is a true distinction between delegation of legislative power, or the function of lawmaking, and the conferring of authority or discretion as to execution of law. This distinction is pointed out in Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okla. 177, 90 P. 2d 899; Cincinnati, W. & Z. R. Co. v. Clinton County, 1 Ohio St. 77; Field v. Clark, 143 U. S. 649; Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504.

We have frequently stated these rules. Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977; Gordon v. Continental Ins. Co., 182 Okla. 240, 76 P. 2d 1055; Patterson v. Stanolind Oil & Gas Co., 182 Okla. 155, 77 P. 2d 83; In re Initiative Petition No. 4, for Repeal of Charter of City of Cushing, 165 Okla. 8, 23 P. 2d 677.

Herein, for the first time, this court is presented with conditional legislation, but the Legislature has determined the policy, which is in this case that in event of a specified contingency, it would best subserve the interest of the state that the Unemployment Compensation Law become inoperative. This is

not a delegation of legislative function to the Supreme Court of the United States, but simply a legislative determination of future applicability of the act dependent upon a contingency. It is true that the Legislature may not select every contingency to govern the effectiveness of a law. The Alabama Unemployment Compensation Law contains the same provision, and it was held in Beeland Wholesale Co. v. Kaufman (Ala.) 174 So. 519, that same did not render the act invalid. In re Opinion of Justices (Ala.) 166 So. 706.

"Enactment to become state law as result of favorable general election, called in act, is invalid as delegation of legislative power."

In some instances it is clear that such an effort is an abdication from duty of declaring a policy, but herein the policy is definitely stated, the condition for inoperation of the law is passed, and there existed a sound basis for the fixed policy when it was prospective.

The Supreme Court of Massachusetts determined almost the identical issues in Howes Brothers Co. v. Massachusetts Unemployment Compensation Commission, 5 N. E. 2d 720. There the act was to become operative upon approval within limited time by the Federal Social Security Board, as provided in section 903, Title IX, of the Federal Act, and therein was considered a provision that "the operation of this act shall thereupon cease" conditioned upon the federal act becoming "inoperative because of unconstitutional or otherwise." There it was pointed out that the legislation was *"part of a general plan that unemployment compensation laws of the same general nature be adopted by the several states."*

It was held that such a provision *"is in harmony with the general design and does not violate any provision of the Constitution of this commonwealth."*

In Mississippi, Tatum v. Wheeless, 180 Miss. 800, 178 So. 95, the Governor was granted power to suspend operation of a similar act under certain con-

ditions. It was held: "The Legislature may fix conditions under which an act may operate * * * and confide to some suitable agency of the state the determination of the question of fact upon which the operation is to be suspended, or resumed after the passing of such condition."

Provisions for variation of income tax law dependent upon exact conditions of federal law have been sustained. Underwood Typewriter Co. v. Chamberlain, 94 Conn. 47, 108 Atl. 154, affirmed 254 U. S. 113. See, also, Hagood v. Doughton, 195 N. C. 811, 143 S. E. 841; Brown v. State, 323 Mo. 138, 19 S. W. 2d 12; People v. Fire Association of Philadelphia, 92 N. Y. 311, affirmed 119 U. S. 110.

In Phoenix Ins. Co. of N. Y. v. Welch, 29 Kan. 480, the Supreme Court of Kansas considered an act which created a contingency upon the action of another state. The act was sustained.

The contention is without substantial merit.

The third and last proposition presented is that the Legislature is without power to provide, under section 19 (f) 4, for the grouping of employing units under common ownership or control to determine applicability of the act.

It is admitted by plaintiffs in error that the two separate, distinct and legal entities, so grouped under the cited provision, are controlled by three directors who own all the stock, but complaint is made that "if you can group two corporations together to make them come under the act, the very purpose of the corporate enterprise would be destroyed." The dates of the charters are February, 1936, and October, 1936, respectively.

In view of the state grant of two separate charters to these corporations sometime before the present act was effective, the real contention is that the charter is a contract which may not be impaired without consent of the corporation. (Dartmouth College v. Wood-

ward, 4 Wheaton, 518; Binghamton Bridge Case, 3 Wall. 51), and that the grouping of the two separate corporations for taxation purposes is such an impairment. But in Unemployment Compensation Commission v. City Ice & Coal Co. (N. C.) 3 S. E. 2d 290, this issue was settled adversely to the contention. Therein two of the corporations were engaged in the coal and ice business and another in dairy pursuits, all were controlled from a central office under general management and ownership. There it was held:

"Under provision of Unemployment Compensation Act defining employer as an employing unit which is 'owned or controlled directly or indirectly by the same interest' three corporations, the stock of which was closely held in one family and which were directed from a central office and operated under a single, central management were liable for contributions under Unemployment Compensation Act as a single employing unit, since corporations were 'owned or controlled directly or indirectly by the same interest' within the act."

It seems to us that maintenance of separate places of business and separate office facilities make no valid distinction where both corporations, as here, are owned and controlled by the same interest.

It is recognized by this court, Wallace v. Tulsa Yellow Cab Taxi & Baggage Co., 178 Okla. 15, 61 P. 2d 645, that to avoid the distinct legal identity of corporations, "Generally speaking, it must appear from an examination of the entire facts either (1) that the separate corporate existence is a design or scheme to perpetrate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation."

In the last-cited case our court held, in the equitable action, that the separate legal entities of the corporations must be disregarded, and that "under proper circumstances a court of equity must brush aside the corporate veil and hold two corporations which are nominal distinct entities to be one and the same."

It is usual and almost axiomatic that equity follows the law, but as applied to the legislation under consideration, it may be said that the law, viewing the progress of equity, has surpassed it by not imposing the limitations in social legislation theretofore required in equitable consideration of private litigation. Herein, under the facts stated, for the purposes set forth in the law, it must be concluded that the two corporations constitute a unit under the law. The law is presumed to be constitutional, and the legislative power extends to all rightful subjects of legislation; while it is contended that there is a lack of legislative power to provide for the grouping of separate corporations so situated for the purposes stated, no particular constitutional inhibition is set forth or relied upon to support the contention. It is only inferentially that the contract clause (sec. 15, art. 2, Constitution) is suggested. This court under the circumstances would be going far afield to hold the provision of law for grouping corporations so owned and controlled, for purposes aforesaid, unconstitutional as an impairment of contract when by section 47, article 9, Constitution, it is provided that the Legislature shall have power to alter any corporate charter "whenever in its opinion it (the corporate charter) may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done the incorporators."

Thus the inquiry is reduced to the simple equation as to whether it is an injustice to the incorporators or a wrong to so group corporations existing under joint ownership and control. That equation is determined negatively, first, by the legislative policy declared in law; second, by great judicial tribunals, including the Supreme Court of the United States, wherein almost identical legislation has been sustained. Carmichael v. Southern Coal & Coke Co., 81 L. Ed. 811, 301 U. S. 495, and wherein it is held that the arbitrary number of eight employees was a reasonable classification for purposes of the taxation, and lastly by our decision under which, in consideration of the assignments made, the judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, and GIBSON, JJ., concur. HURST and DANNER, JJ., absent.