No. 15,345.

TEETS, DIRECTOR OF THE DEPARTMENT OF EMPLOYMENT SECURITY *v.* LEACH ET AL.
(148 P. [2d] 365)

Decided April 3, 1944.   Rehearing denied April 24, 1944.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-
RENCE HINKLEY, Deputy, Mr. HENRY E. ZARLENGO, Assist-
ant, for plaintiff in error.

Mr. HARRY S. PETERSEN, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the
court.

THIS case involves a question of liability for contribu-
tion under the Colorado Unemployment Compensation
Act as adopted in 1936 and amended in 1937 and 1939.
The parties are before us in reverse order of their ap-
pearance in the trial court, and we shall refer to them
as they there appeared. The action originated in the
district court of Pueblo county, when plaintiffs brought
suit praying that section 19 (f) (4) of the act be declared
unconstitutional and void; and further praying that the
defendant be enjoined and restrained from collecting or
further attempting to collect from plaintiffs any sums
alleged to be due under the foregoing act, and from fil-
ing or recording any liens or statements for the purpose
of securing the collection of any such sums; also asking

the refund of $259.83 representing moneys erroneously previously paid defendant under said act.

Defendant claims that the two plaintiffs are liable to contribution by virtue of two sections of said act. Section 19 (f) (1) reads: " 'Employer' means: * * * (1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day);" Amended section 19 (f) (4) reads: " 'Employer' means: * * * (4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection;"

The agreed statement of facts shows that plaintiff, A. C. Leach, is an individual doing business as Biff Manufacturing Company, with place of business at 207 North Santa Fe Avenue, Pueblo, where he has been engaged in the manufacture, sale and distribution of insecticides, cleaning compounds and janitors' supplies in general since September 1927. The Leach Realty Company, a Colorado corporation, the other plaintiff, has engaged in the general real estate and insurance business since July 1923, with its offices at 322 North Santa Fe Avenue, Pueblo; that the two concerns have always maintained separate offices, operated entirely different types of business, kept separate records and books of account, and at no time has there been any business connection between the two companies; that said concerns have never put on a common front to the public; that during the years 1936 to 1940, inclusive, no

employee of either of said plaintiffs was also an employee of the other plaintiff; that neither of said concerns was organized for the purpose of evading any taxes; that Leach, as the Biff Manufacturing Company, did not at any time during the years 1936 to 1940, inclusive, have in his employ eight or more employees; that the Leach Realty Company, a corporation, at no time during the years 1936 or 1937, inclusive, had in its employ eight or more employees; that the number of employees of the two plaintiffs, if combined, during the period 1936-1940, inclusive, would exceed eight in number; that the directors of the Leach Realty Company, during the years 1936 and 1937, were A. C. Leach, his wife Julia Frances Leach, and Helen C. Peters; that for the years 1938, 1939 and 1940 the directors were A. C. Leach, Julia Frances Leach and Richard F. Leach, the son of A. C. Leach; that in September 1937 A. C. Leach, the then owner of the majority of the outstanding stock of the company, transferred one-fourth interest in that business and one-fourth of the outstanding capital stock to each of his two sons, Richard F. Leach and Honald Leach; that from that date Richard and Honald were employed by the corporation, and the profits of the business were divided one-fourth to Richard, one-fourth to Honald and one-half to A. C. Leach; that since September 1937 Richard and Honald have managed the affairs of the company. Neither the Biff Manufacturing Company nor the Leach Realty Company elected to come under the provisions of the act for the years in question.

The trial court overruled the contentions that the act was unconstitutional and that it was too vague and indefinite to be enforceable; but held that the two plaintiffs did not come within the purview of the act, using the following language:

"It is admitted by all parties herein that a taxing statute should be strictly construed in so far as it refers

to the liability of a person sought to be held subject to the tax.

"The Court is of the opinion that the Biff Manufacturing Company and the Leach Realty Company are not owned and controlled by the same interests; are not owned or controlled by legally enforceable means or otherwise, directly or indirectly by the same interests, and that the said A. C. Leach does not own or control one or more other employable units by legally enforceable means or otherwise, and which, if treated as a single unit with such other employing unit would be an employer under Paragraph I of this said section.

"It is the opinion of the Court that the words 'same interests,' as used in this statute means identical interests, and that the legislature did not intend by this language to say that an individual conducting a business, who was at the same time the principal stockholder and president of a corporation maintaining an entirely unrelated business, would be within the purview of this language.

"The plaintiff further seeks in his complaint to recover some contributions heretofore made by the Biff Manufacturing Company covering the time in question. It is the opinion of the Court that the Act itself provides a method whereby such contributions may be recovered if erroneously paid, and that the procedure outlined by the statute must be followed by the plaintiffs if they desire to recover these payments.

"It is further the opinion of the Court that the injunction as prayed for should issue herein."

Defendant's position is that plaintiffs come within the purview of section 19 (f) (4) for the reason that A. C. Leach *owns* the Biff Manufacturing Company, and *controls* the Leach Realty Company by reason of being president, director, and, originally, manager and the owner and holder of all of the capital stock except two qualifying shares; that even if by some office, or other arrangement, he did not have immediate control, he had

at least the ultimate control, a control that the respective state Supreme Courts in *Florida Industrial Commission v. Gary-Lockhart Drug Co.,* 143 Fla. 293, 196 So. 845, *Maine Unemployment Compensation Commission v. Androscoggin Junior, Inc.,* 137 Me. 154, 16 A. (2d) 252, and *Kellogg v. Murphy,* 349 Mo. 1165, 164 S.W. (2d) 285, have held, under similarly worded statutory provisions, brought the respective corporations within the purview of the unemployment acts.

*Maine Unemployment Compensation Commission v. Androscoggin Junior, Inc., supra,* involved three different law suits which were consolidated. In two of the cases there existed an identity of control of two corporations operating in the same field, at least one of which had been incorporated after the passage of the act. The third case does not disclose sufficient facts to show whether it is analogous to the instant case. Regardless of whether this Maine decision is distinguishable from the case at bar, we are definitely of the opinion that the other two above mentioned cases upon which defendant relies do not support his contention.

In *Florida Industrial Commission v. Gary-Lockhart Drug Co., supra,* there was a provision under a 1937 act similar to section 19 (f) (4) of the Colorado law. In 1939 this provision was amended by adding the words which we italicize, and as amended it is as follows: "Any employing unit which, together with one or more employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests *or by husband and wife,* or which owns or controls one or more other employing units *or a majority of the voting stock of one or more corporations* (by legally enforceable means or otherwise) and which, if treated as a single unit with such other employing units, or interests, or both, would be an employer under paragraph 1 of this subsection." The Florida Supreme Court, although holding the Gary-Lockhart Company liable under the provisions of the 1939 act,

expressly stated that it would not have been liable under the provisions of the 1937 act. Inasmuch as our section (f) (4), in question, is practically the same as the like provision of the 1937 Florida act, this case would appear to be authority for relieving plaintiffs from making contributions in the instant case.

In *Kellogg v. Murphy, supra,* the court held two corporations liable under the Missouri act; yet the reasons for so holding in that case would seem to be sufficient to sustain a holding relieving plaintiffs from liability in the instant case. The Missouri court, in the course of its opinion, said:

"We agree proof of major ownership, or control, of two separate businesses (corporate or otherwise) by the same employing unit sometimes would be sufficient to make an inference of unified control not unreasonable or arbitrary. Sometimes it would be wholly insufficient, depending on the proven history, location and nature of the two businesses. Hence we are unable to approve respondents' broad and unrestricted formula that any two or more businesses anywhere in the state are prima facie brought under the Unemployment Compensation Act by the sole fact of common major ownership or control, regardless of any evidence to the contrary."

"We hold the affiliate clause subsection (h) 4 should be construed to refer to businesses which by location, nature or common experience might not unreasonably be expected to operate under substantial unification in the absence of such a statute; and to those where there is evidence of actual unification."

In his brief counsel for plaintiffs points out that, in the following cases where liability for contribution was upheld, there was a similarity in the businesses conducted by the two corporations; thus in *Unemployment Compensation Commission v. City Ice & Coal Co.,* 216 N.C. 6, 3 S.E. (2d) 290, both concerns were operated from a central business office where all matters and records were kept and clerical matters handled. *State ex*

*rel. v. J. M. Willis Barber & Beauty Shop,* 219 N.C. 709, 15 S.E. (2d) 4, involves three barber shops, all owned or controlled by the same individual. In *Gibson Products Co. v. Murphy,* 186 Okla. 714, 100 P. (2d) 453, both concerns were oil companies. In *New Haven Metal & Heating Supply Company v. Danaher,* 128 Conn. 213, 21 A. (2d) 383, the record shows that part of the business was transferred to another concern for the express purpose of avoiding the tax.

In *State Unemployment Compensation Board v. Warrior Petroleum Company, Inc.* (Ind.), 46 N.E. (2d) 827, the court had before it two petroleum corporations. One individual owned practically all of the stock in one of them and was the majority stockholder and president of the other. This majority stockholder and his wife served as officers and directors of the two corporations, constituting a majority of the board of each corporation. The corporations were operated from different addresses, and neither jointly nor as one unit. In the course of its opinion the court said:

"We agree that in order for two businesses to constitute one employing unit under the terms of the affiliate clause of our Unemployment Compensation Law, there must be substantial unification of two businesses resulting from actual joint control. In the instant case the trial court, expressly given original jurisdiction to try the action * * * found that the two businesses here involved did not constitute a single employer within the meaning of said act. In view of the evidence, we cannot say, as a matter of law, that the two businesses were 'owned or controlled' by the same interests within the meaning of the affiliate clause. It is true that one individual owned a majority of the stock in each corporation. It is also true that during most of the time involved he and other members of the family constituted a majority of the board of directors of each of the corporations. On the other hand, it is also true that these two corporations were organized separately and there was

no intimation of attempted tax evasion by the method of operation. There was evidence that while the appellee company was engaged in marketing petroleum solvents the other company did not and could not, with its facilities, handle petroleum solvents; that the two businesses were located at different addresses and operated independently *· * * and that there was no interchange of employees between the two companies."

"While most of the cases on the question of the interpretation of such affiliate clauses have decided, under the particular facts involved, that the employing units being considered did constitute a single 'employer' within the meaning of the act, we find that in most of the cases so holding there was evidence of substantial unification under actual joint control such as having the businesses conducted on the same premises and from the same office or the intermingling of employees and the gratuitous exchange of services, and in some of the cases there was evidence tending to show attempted evasion of the law. All of the cases recognize that the purpose of such a clause is to prevent circumvention of the law by dividing a business having the required number of employees into smaller units each having less than the required number."

The facts in the case of *Independent Gasoline Co. v. Bureau of Employment Compensation,* 190 Ga. 613, 10 S.E. (2d) 58, are very similar to those in the instant case, as is disclosed by a specially concurring opinion by Mr. Justice Grice, which reads as follows: "I am agreeing to the opinion, but there is an additional reason why it seems to me the judgment is correct, and that is that the statute referred to did not contemplate a situation such as is shown by this record. Here we have not only two distinct corporations, but one of them is in one county, one in another. One's line of business is entirely different from the other's. The work required of an employee of the one is not of the same character as that of the other. The two are not one business. It is not

a case where the same employees work sometimes for one company and at other times for the other company. It is not an instance where two or more corporations are engaged in doing things which in their nature are related, nor where for convenience different elements of the same business are operated under different charters; nor is this a case of subterfuge. The two businesses are wholly unrelated. It was not intended that the law should be applied to a state of facts such as that here shown." See, also, *Benner-Coryell Lumber Co. v. Indiana Unemployment Compensation Board,* 218 Ind. 20, 29 N.E. (2d) 776.

It has already been noted that the Florida legislature in 1939 added words to its affiliate clause calculated to bring facts like those in the instant case within its purview. It should be added that the legislature of North Carolina in 1941 moved in the opposite direction by repealing an identical affiliate clause (section 19 (f) (4)), and the Colorado General Assembly in 1941 reenacted the entire unemployment compensation law, from which subsection (f) (4) was omitted. In both cases the changes were made before a final judicial interpretation had been rendered.

We believe the trial court's disposition of this case was correct, both in respect to the question heretofore discussed and as to the ruling that the procedure outlined by the statute must be followed by plaintiffs if they desire to collect contributions heretofore erroneously exacted.

Judgment affirmed.